## Commonwealth *v.* Davis, Appellant.

*Criminal law—Murder—Twice in jeopardy—Illness of juror—Epilepsy—Lapses of consciousness—Contagious disease—Influenza—Discharge of jury.*

1. Where a jury impaneled and sworn in a murder case is discharged on account of the illness of a juror, the prisoner cannot, when called for trial a second time, plead former jeopardy, where it appears that the juror's illness was of a character to seriously impair his power to discharge his duties, as there were momentary lapses of consciousness, and that his continued service would involve imminent risk to himself and danger of communicating a contagious disease, epidemic at the time, to his fellow jurors.

*Criminal law—Murder—Charge—Use of word "concludes" for word "presumes."*

2. On a murder trial the court cannot be convicted of error in charging that "the law concludes that when a man uses a deadly weapon a number of times as by firing more than one shot, he has more time to consider the circumstances and to form an intention to kill, and his mind is more likely to be fully conscious of the design to kill." In such a case the use of the word "concludes" instead of the word "presumes" is immaterial, and especially is this the case where it appears that the court immediately before and after the passage quoted, used such language in connection with

the word "presumes" that the jury could not have been misled by the language of which complaint was made.

*Criminal law—Murder—Sentence—Practice, Supreme Court— Referring case back for resentence—Act of June 19, 1913, P. L. 528.*

3. Where the sentence in a murder case is not fully in accordance with the requirements of the Act of June 19, 1913, P. L. 528, the record will be referred back to the court below for the entry of a sentence in a form approved by the Supreme Court.

*Appeals — Practice, Supreme Court — Assignments of error — Statement of questions involved.*

4. Where an assignment of error is not pressed at the argument, and is not included in the statement of questions involved, it is not properly before the appellate court.

Argued October 13, 1919.   Appeal, No. 73, Oct. T., 1919, by defendant, from judgment of O. & T. Allegheny Co., March T., 1918, No. 33, on verdict of guilty of murder of the first degree in case of Commonwealth v. James Davis.   Before BROWN, C. J., MOSCHZISKER, FRAZER, WALLING, SIMPSON and KEPHART, JJ.   Affirmed with modification.

Indictment for murder.   Before BELL, P. J., specially presiding.

Verdict of guilty of murder of the first degree upon which judgment of sentence was passed.   Defendant appealed.

*Errors assigned* (1, 2) are set forth in the opinion of the Supreme Court.

*Frank R. Steward,* with him *William H. Stanton,* for appellant.

*Homer N. Young,* Assistant District Attorney, with him *Harry H. Rowand,* District Attorney, for appellee.

OPINION BY MR. JUSTICE FRAZER, January 12, 1920:

Defendant appeals from a conviction of murder of the first degree. There are but two assignments of error; the first is to the action of the court below in sustaining a demurrer filed by the Commonwealth to a plea of former jeopardy interposed by defendant. This assignment was not pressed at the argument and is not included in the statement of questions involved, consequently is not properly before this court. The question raised, however, will be considered.

The case was first called for trial November 18, 1918, a jury impaneled and sworn, and, at the conclusion of the testimony of one witness, the trial judge was informed of the illness of one of the jurors. Two physicians called to examine the juror reported he was suffering from a mild form of epilepsy and also an attack of influenza. The jury was discharged and on the following day the case again called for trial and a new jury impaneled, at which time the plea of former jeopardy was entered. From the testimony of the physicians the trial judge found the disease from which the juror was suffering rendered him liable not only to convulsive attacks, but also to momentary lapses of consciousness without visible evidence of such condition, consequently at the conclusion of the trial it could not be known whether the juror had heard the entire testimony. The trial judge further found the juror's illness was of such character as might seriously impair his power to discharge his duties and that his continued service would involve imminent risk to himself and danger of communicating a contagious disease, epidemic at the time, to his fellow jurors.

The general rule is that a juror incapacitated by illness or insanity from performing his duty, either before or after the jury has retired, constitutes a necessity justifying their discharge and will not amount to an aquittal of the defendant: 16 Corpus Juris 252, and cases cited. This rule was recognized in Com. v. Cook,

6 S. & R. 577. While in that case it was held the action of the trial judge, in discharging the jury because of failure to agree, barred a subsequent prosecution for the same offense, in the course of the opinion, this court said (page 579) : "There is, indeed, one principle which cannot be contradicted, and that is, that the jury may be discharged in cases of absolute necessity; but what constitutes that necessity has been ascertained only in particular cases that have arisen." The court, after reviewing the early English cases sustaining the right to discharge the jury in case of physical disability, further said (page 586) : "The moment it is made to appear to the court, by satisfactory evidence, that the health of a single juryman is so affected as to incapacitate him to do his duty, a case of necessity has arisen, which authorizes the court to discharge the jury." In Com. v. Fitzpatrick, 121 Pa. 109, it was held the court was without power to discharge a jury in a capital case unless absolute necessity requires such action or that the serious illness or insanity of the defendant and the illness, insanity or death of the judge or a juror engaged in the trial, is sufficient to create a necessity for the withdrawal of a juror and postponement of the trial. It thus appears the action of the court below is fully justified by the authorities. The assignment is not sustained?

The remaining assignment upon which defendant relies for reversal is to a portion of the language used in a supplemental charge to the jury, made at their request for additional information, relating to the effect to be given the repeated use of a deadly weapon as bearing upon the intent to kill. The clause excepted to is as follows: "The law concludes that when a man uses a deadly weapon a number of times as by firing more than one shot, he has more time to consider the circumstances and to form an intention to kill, and his mind is more likely to be fully conscious of the design to kill." The particular complaint with respect to this instruction is

based on the use of the word "concludes" instead of the word "presumes." The contention is that the word used signified a conclusion of law, and, consequently, tended to lead the jury to believe they were not free to draw their individual inferences and conclusions from the fact that the weapon was used a number of times. This criticism is of the most technical character and tends to unduly magnify a trivial departure from precise technical language. While one trained in legal terminology would immediately recognize the legal distinction between the two words, he could not at the same time fail to observe that the word "concludes" was used by the trial judge merely as a substitute for the word "presumes." The jury could not have understood otherwise nor have been misled by its use, especially in view of the language immediately preceding and follow-, ing, instructing the jury that "the law presumes a man intends the natural consequences of his acts and therefore where there is a killing with a deadly weapon, intentionally used, it is presumed that the slayer intended to kill. This presumption is made stronger where the weapon is used more than once. The law does not define any particular number of uses as constituting any particular degree of homicide, but regards the repeated use of a deadly weapon as making stronger the presumption of such intention and as evidence for the jury to consider as to deliberation and premeditation." This instruction is followed by the sentence assigned for error, after which the court continued: "All of the facts are for the jury, and it is for the jury to say, considering all the evidence, whether a killing has been shown to be willful, deliberate and premeditated; and that, whether there be one or more shots fired. The number of shots fired concerns only the evidence and the weight it may have with you in determining what were the acts of the accused and whether or not in so acting there was in his mind an intention to kill fully formed by a mind conscious fully of that intention to kill, with sufficient time to frame

the design and select the instrument or means of death." Considering the charge as a whole it is apparent the assignment is without merit, and it is, accordingly, overruled.

At the argument an additional assignment of error was allowed alleging error in the sentence pronounced by the court below, in that it was not fully in accordance with the requirements of the Act of June 19, 1913, P. L. 528. This assignment must be sustained as the sentence failed to embrace all essential matters set out in the act. Had the judgment been properly pronounced it would be affirmed, but as it is lacking in part, the record must be referred back to the court below for the entry of a proper sentence, and, as a compliance with the Act of 1913, this court has adopted a form of sentence, a copy of which has been mailed to the several judges of the courts of oyer and terminer throughout the Commonwealth.

The record is remitted with direction that defendant be resentenced in accordance with the foregoing opinion, and, upon entry of such sentence, that it be carried into execution.

NOTE.—The form of sentence referred to in the opinion of the Supreme Court is as follows: And now......the sentence of the law is that you,......be taken hence by the sheriff of...... County to the jail of that county from whence you came, and from thence in due course to the Western Penitentiary in Centre County, Pennsylvania, and that you there suffer death during the week fixed by the Governor of the Commonwealth, in a building erected for the purpose on land owned by the Commonwealth, such punishment being inflicted by either the warden or deputy warden of the Western Penitentiary, or by such person as the warden shall designate, by causing to pass through your body a current of electricity of intensity sufficient to cause death and the application of such current to be continued until you are dead. [To this may be added the usual invocation:] May God in His infinite goodness have mercy on your soul.