Commonwealth ex rel. Montgomery, Appellant, *v.* Myers.

Submitted March 15, 1966.  Before BELL, C. J., MUS-
MANNO, JONES, EAGEN, O'BRIEN and ROBERTS, JJ.

*Donald H. Montgomery,* appellant, in propria per-
sona.

*Robert F. Hawk,* Assistant District Attorney, and
*John H. Brydon,* District Attorney, for appellee.

OPINION BY MR. JUSTICE ROBERTS, June 24, 1966:

The first question presented on this appeal is whether, in the particular circumstances of this record, appellant's conviction of murder in the first degree, following the termination of a prior trial by the declaration of a mistrial, on appellant's motion, violates the prohibitions against double jeopardy contained in either the Federal or State Constitutions.[1] The court below, in dismissing appellant's petition for a writ of habeas corpus, concluded that his conviction was without constitutional objection. We are of the view that the court reached the correct conclusion and affirm its action.

In June 1962, appellant was brought to trial before a jury in the Court of Oyer and Terminer of Butler County on consolidated indictments charging murder, arson, burglary and armed robbery. During the course of the trial, the district attorney, in his summation, referred to appellant as a "pro" and as an "old pro", whereupon counsel for appellant moved for the withdrawal of a juror on the ground that such reference had prejudiced appellant's right to a fair trial. The motion was granted and a mistrial declared.

Upon being brought to trial again, appellant moved the court to dismiss the indictment charging murder on the ground that to try him again would constitute double jeopardy.[2] The motion was denied and appel-

[1] The Fifth Amendment to the Constitution of the United States provides, in part, ". . . nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . . ." A like limitation, different only in minor phrasing, is found in Article I, §10 of the Constitution of Pennsylvania.

[2] The prohibition of double jeopardy contained in Article I, §10 of the Constitution of this Commonwealth has been held to preclude retrial in capital cases only. *Commonwealth v. Simpson*, 310 Pa. 380, 165 Atl. 498 (1933); see *Commonwealth v. Baker*, 413 Pa. 105, 115, 196 A. 2d 382, 387 (1964), and cases cited therein. The Fifth Amendment provision, however, has not been so limited and

lant was retried and found guilty of murder in the first degree and sentenced to life imprisonment.[3] He now attacks the conviction in which the second trial resulted.

In considering appellant's contentions, we note at the outset that existing precedent holds that the Fifth Amendment prohibition against double jeopardy is not a limitation on the power of a state to reprosecute a criminal defendant, that power being subject to the less confining restraint of the Due Process Clause of the Fourteenth Amendment. See *Bartkus v. Illinois*, 359 U.S. 121, 79 S. Ct. 676 (1959); *Ciucci v. Illinois*, 356 U.S. 571, 78 S. Ct. 839 (1958) (per curiam); *Hoag v. New Jersey*, 356 U.S. 464, 78 S. Ct. 829 (1958); *Brock v. North Carolina*, 344 U.S. 424, 73 S. Ct. 349 (1953); *Palko v. Connecticut*, 302 U.S. 319, 58 S. Ct. 149 (1937). However, recent decisions[4] of the Supreme Court of the

has been construed as applicable to non-capital as well as capital cases. *Ex Parte Lange*, 18 Wall. 163 (1873); see *Downum v. United States*, 372 U.S. 734, 83 S. Ct. 1033 (1963).

At trial, counsel for appellant relied upon the Constitution of Pennsylvania and thus limited his attack on the right of the Commonwealth to retry appellant for first degree murder. Cf. *Commonwealth v. Baker*, supra. Appellant, however, proceeding pro se, has challenged his conviction under the double jeopardy provision of the Fifth Amendment as well. Thus, the right of the Commonwealth to reprosecute appellant under the indictments charging arson, burglary, and armed robbery is equally in issue.

[3] Appellant was also found guilty of the other offenses charged, the offenses having been consolidated as in the prior proceeding. He was sentenced to consecutive sentences on these indictments, each to run concurrently with the life sentence received under the murder charge.

[4] In *Malloy v. Hogan*, 378 U.S. 1, 84 S. Ct. 1489 (1964), the Supreme Court overruled *Twining v. New Jersey*, 211 U.S. 78, 29 S. Ct. 14 (1908), and held the Fifth Amendment guarantee against compulsory self-incrimination applicable in state court prosecutions. In a like manner, the Court, in *Pointer v. Texas*, 380 U.S. 400, 85 S. Ct. 1065 (1965), overruled *West v. Louisiana*, 194 U.S. 258, 24 S. Ct. 650 (1904), in concluding that the Sixth Amendment right of confrontation was binding on the states as well as

United States, holding provisions of the Fifth and Sixth Amendments, previously viewed as restrictions on the power of the federal government only, as binding on the states through the Due Process Clause of the Fourteenth Amendment, have cast some doubt on the continuing vitality of these precedents. See Comments, Double Jeopardy: Its History, Rationale and Future, 70 Dick. L. Rev. 377 (1966); Notes, Double Jeopardy: The Reprosecution Problem, 77 Harv. L. Rev. 1272, 1286-89 (1964); *People v. Laws,* 29 Ill. 2d 221, 193 N.E. 2d 806 (1963); cf. *United States ex rel. Hetenyi v. Wilkins,* 348 F. 2d 844, 849-56 (2d Cir. 1965). We find it unnecessary to anticipate the Supreme Court on this question, however, since we are of the view that even were the Fifth Amendment, with the body of federal decisional law which has delineated its contours, held to be presently binding on the states, no transgression thereunder may be said to have occurred by reason of appellant's reprosecution.[5] Similar considerations lead us also to conclude that appellant's conviction is not precluded by the double jeopardy provision of Article 1, §10 of the Constitution of this Commonwealth.

---

the federal government. See also *Gideon v. Wainwright,* 372 U.S. 335, 83 S. Ct. 792 (1963), overruling *Betts v. Brady,* 316 U.S. 455, 62 S. Ct. 1252 (1942), and extending the Sixth Amendment right to counsel guarantee to state court proceedings. A similar expansion of the guarantees under the Fourth Amendment was mandated by the decisions in *Mapp v. Ohio,* 367 U.S. 643, 81 S. Ct. 1684 (1961), and *Ker v. California,* 374 U.S. 23, 83 S. Ct. 1623 (1963), which nationalized the exclusionary rule and the federal decisional law which has guided its application in the federal courts. See generally Comments, Double Jeopardy: Its History, Rationale and Future, 70 Dick. L. Rev. 377 (1966).

[5] In *Cichos v. Indiana,* 208 N.E. 2d 685 (Ind. 1965), cert. granted, 34 U.S.L. Week 3339 (April 4, 1966), the Supreme Court is again confronted with the issue of whether *Palko v. Connecticut,* 302 U.S. 319, 58 S. Ct. 149 (1937), should be overruled and the Fifth Amendment double jeopardy provision held binding on the states through the Due Process Clause of the Fourteenth Amendment.

Under the double jeopardy provision of the Constitution of Pennsylvania the mere fact that a defendant is placed on trial before a competent tribunal does not preclude reprosecution if the proceeding fails to terminate in a verdict. See *Commonwealth v. Baker,* 413 Pa. 105, 115, 196 A. 2d 382, 387 (1964) (dictum) ; *Commonwealth v. Kent,* 355 Pa. 146, 49 A. 2d 388 (1946) ; *Commonwealth v. Davis,* 266 Pa. 245, 110 Atl. 85 (1920) ; *Commonwealth v. Christopher,* 168 Pa. Superior Ct. 592, 80 A. 2d 863 (1951) (per curiam). Such construction of our constitution is consistent with the view taken of the proscription against double jeopardy contained in the Fifth Amendment and the constitutions of other jurisdictions. See, e.g., *United States v. Tateo,* 377 U.S. 463, 84 S. Ct. 1587 (1964) ; *Gori v. United States,* 367 U.S. 364, 81 S. Ct. 1523 (1961) ; *Wade v. Hunter,* 336 U.S. 684, 69 S. Ct. 834 (1949) ; *Thompson v. United States,* 155 U.S. 271, 15 S. Ct. 73 (1894) ; *United States v. Perez,* 9 Wheat. 579 (1824) ; *Orr v. State,* 236 Ala. 462, 183 So. 445 (1938) ; *State v. Dowthard,* 92 Ariz. 44, 373 P. 2d 357 (1962), cert. denied, 372 U.S. 920, 83 S. Ct. 735 (1963) ; *People v. Mills,* 148 Cal. App. 2d 392, 306 P. 2d 1005, cert. denied, 355 U.S. 841, 78 S. Ct. 55 (1957) ; *McLendon v. State,* 74 So. 2d 656 (Fla. 1954) ; *Kamen v. Gray,* 169 Kan. 664, 220 P. 2d 160, cert. denied, 340 U.S. 890, 71 S. Ct. 206 (1950) ; *Clukey v. State,* 160 Me. 198, 202 A. 2d 6 (1964) ; *State v. Romeo,* 43 N.J. 188, 203 A. 2d 23 (1964), cert. denied, 379 U.S. 970, 85 S. Ct. 668 (1965) ; *State v. Ravencraft,* 222 S.C. 139, 71 S.E. 2d 798 (1952) ; *DeYoung v. State,* 160 Tex. Crim. 628, 274 S.W. 2d 406 (1954) ; Notes, Double Jeopardy: The Reprosecution Problem, 77 Harv. L. Rev. 1272 (1964). Numerous circumstances have been held to permit a second trial although the jury or tribunal originally impanelled was discharged without reaching a verdict. The most common and classic example of such an occasion is that presented when the first

jury was unable to reach agreement. See, e.g., *Downum v. United States,* 372 U.S. 734, 736, 83 S. Ct. 1033, 1034 (1963); *Logan v. United States,* 144 U.S. 263, 12 S. Ct. 617 (1892); *United States v. Perez,* 9 Wheat. 579 (1824); *Commonwealth v. Kent,* 355 Pa. 146, 49 A. 2d 388 (1946); *McCreary v. Commonwealth,* 29 Pa. 323 (1857); *State v. Blockyou,* 195 Kan. 405, 407 P. 2d 519 (1965). Likewise, the termination of the initial proceeding because of the disqualification[6] or illness of a juror[7] or the exigencies of the military during time of war[8] have all been held to place reprosecution beyond the mantle of double jeopardy.[9]

In the federal courts, the test most typically has been formulated in terms of the "manifest necessity" for the premature termination, and the conclusion reached that a trial so terminated creates no barrier to reprosecution. Notes, Double Jeopardy: The Reprosecution Problem, 77 Harv. L. Rev. 1272, 1277 (1964); see *Downum v. United States,* 372 U.S. 734, 83 S. Ct. 1033 (1963); *Gori v. United States,* 367 U.S. 364, 81 S. Ct. 1523 (1961).[10] The test had its origin in *United States v. Perez,* 9 Wheat. 579, 580 (1824), where the Court, in a unanimous opinion written by Mr. Justice STORY, stated: "We think, that in all cases of this nature,

---

[6] E.g., *Thompson v. United States,* 155 U.S. 271, 15 S. Ct. 73 (1894); *Simmons v. United States,* 142 U.S. 148, 12 S. Ct. 171 (1891).

[7] E.g., *United States v. Potash,* 118 F. 2d 54 (2d Cir.), cert. denied, 313 U.S. 584, 61 S. Ct. 1103 (1941); *Commonwealth v. Davis,* 266 Pa. 245, 110 Atl. 85 (1920).

[8] *Wade v. Hunter,* 336 U.S. 684, 69 S. Ct. 834 (1949).

[9] See generally, Notes, Double Jeopardy: The Reprosecution Problem, 77 Harv. L. Rev. 1272, 1277 (1964).

[10] Compare the "necessity" formulation which has been employed by this Court in considering the applicability of the double jeopardy provision of the State Constitution. See *Commonwealth v. Baker,* 413 Pa. 105, 196 A. 2d 382 (1964), and cases cited therein.

the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, Courts should be extremely careful how they interfere with any of the chances of life, in favor of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office. . . ."

While disagreement among members of the Supreme Court of the United States as to whether a particular case falls within these broad considerations has marked that Court's most recent endeavors in this area,[11] the pronounced tenor of the Court's teachings is that where the particular circumstances create no danger of the successive, oppressive prosecutions sought to be precluded by the limitation of double jeopardy, retrial is permissible. See *United States v. Tateo,* 377 U.S. 463, 84 S. Ct. 1587 (1964); *Gori v. United States,* 367 U.S. 364, 81 S. Ct. 1523 (1961). Thus, when the trial is prematurely terminated because of a "breakdown in judicial machinery,"[12] unrelated to conduct on the part of the state calculated to abort the proceeding in order

---

[11] See Notes, Double Jeopardy: The Reprosecution Problem, 77 Harv. L. Rev. 1272, 1276-79 (1964), and the recent decision in *United States v. Tateo,* 377 U.S. 467, 84 S. Ct. 1587 (1964).

[12] *Gori v. United States,* 367 U.S. 364, 372-73, 81 S. Ct. 1523, 1527, 1528 (1961) (DOUGLAS, J., dissenting).

188

to avoid an unfavorable verdict, reprosecution does not transgress the prohibition of double jeopardy. See *Gori v. United States*, 367 U.S. 364, 370, 372-73, 81 S. Ct. 1523, 1527, 1528 (1961) (Douglas, J., dissenting); Notes, Double Jeopardy: The Reprosecution Problem, 77 Harv. L. Rev. 1272, 1277 (1964). Under such circumstances, the accused's "valued right to have his trial completed by a particular tribunal must . . . be subordinated to the public's interest in fair trials designed to end in just judgments." *Wade v. Hunter*, 336 U.S. 684, 689, 69 S. Ct. 834, 837 (1949). The societal interest in the avoidance of improper acquittals and in the punishment of the guilty has been viewed to require retrial notwithstanding the financial, physical and psychological burdens which may occasionally be imposed thereby. See *United States v. Tateo*, 377 U.S. 463, 466, 84 S. Ct. 1587, 1589 (1964); *Gori v. United States*, 367 U.S. 364, 81 S. Ct. 1523 (1961); *Wade v. Hunter*, 336 U.S. 684, 69 S. Ct. 834 (1949); cf. *United States v. Ball*, 163 U.S. 662, 16 S. Ct. 1192 (1896); *Commonwealth v. Scoleri*, 415 Pa. 218, 202 A. 2d 521 (1964); *Commonwealth v. Melton*, 406 Pa. 343, 178 A. 2d 728, cert. denied, 371 U.S. 851, 83 S. Ct. 93 (1962); *Commonwealth ex rel. Farrow v. Martin*, 387 Pa. 449, 127 A. 2d 660, cert. denied, 353 U.S. 986, 77 S. Ct. 1288 (1956).

However, even absent conduct on the part of the state calculated to abort a trial in which its case is going badly, retrial may be precluded where the accused's interest in proceeding with a particular tribunal is disregarded without adequate justification. So, where the prosecution is unable, after the jury is impanelled, to proceed in an orderly fashion and a mistrial is declared over the objection of the defendant, double jeopardy precludes a second opportunity for the state. *Downum v. United States*, 372 U.S. 734, 83 S. Ct. 1033 (1963). Likewise, where a jury laboring under disagreement is prematurely discharged, and the possi-

bility that those who favor a verdict of not guilty may gain the ascendency too soon discounted, double jeopardy limits retrial. See *Commonwealth v. Baker*, 413 Pa. 105, 196 A. 2d 382 (1964); *Paulson v. Superior Court*, 58 Cal. 2d 1, 372 P. 2d 641 (1962).

Of far greater difficulty is the problem presented, as in the instant case, where the mistrial results from misconduct on the part of the prosecutor. Very little attention has been accorded the issue by courts which have considered the problem, double jeopardy most usually being held inapplicable by reason of the accused's consent, by moving for a mistrial, to the termination of the initial proceeding. See, e.g., *Gori v. United States*, 367 U.S. 364, 370, 81 S. Ct. 1523, 1527 (1961) (DOUGLAS, J., dissenting); *Blair v. White*, 24 F. 2d 323 (8th Cir. 1928); *Barrett v. Bigger*, 17 F. 2d 669 (D.C. Cir.), cert. denied, 274 U.S. 752, 47 S. Ct. 765 (1927); *United States v. Harriman*, 130 F. Supp. 198 (S.D. N.Y. 1955); *Orr v. State*, 236 Ala. 462, 183 So. 445 (1938); *People v. Mills*, 148 Cal. App. 2d 392, 306 P. 2d 1005, cert. denied, 355 U.S. 841, 78 S. Ct. 55 (1957); *Kamen v. Gray*, 169 Kan. 664, 220 P. 2d 160, cert. denied, 340 U.S. 890, 71 S. Ct. 206 (1950); *State v. Wolak*, 33 N.J. 399, 165 A. 2d 174 (1960), cert. denied, 365 U.S. 822, 81 S. Ct. 710 (1961). To the extent that such expressions are intended to embody notions of "waiver", we are unable to view them with approval. To hold that an accused must barter away his constitutional protection against the oppression of multiple prosecution in order to avoid the hazards of continuing with a proceeding which by hypothesis has been tainted so as to prejudice his right to a fair trial would not be consistent with the administration of justice.

Yet, at the same time, the fact that the defendant has moved for a mistrial or otherwise consented to the termination of the proceeding is a factor to be considered in determining whether the circumstances call

for the application of double jeopardy. In such a case, the accused, by moving for the withdrawal of a juror, has made the decision to bypass the panel then constituted and to forego the possibility that the jury might acquit, notwithstanding the misconduct which has marred the trial. Cf. *United States v. Tateo,* 377 U.S. 463, 468, 473-74, 84 S. Ct. 1587, 1590, 1593 (1964) (GOLDBERG, J., dissenting). Certainly, we deal with a wholly different situation when the defendant desires to continue with the jury as originally impanelled and objects to the termination of the trial. A mistrial declared in the face of the accused's insistence on his "valued right" to proceed with the panel as there and then constituted would interject considerations not here present. As Mr. Justice FRANKFURTER, speaking for the majority in *Gori v. United States,* 367 U.S. 364, 369, 81 S. Ct. 1523, 1526-27 (1961), stated, "judicial wisdom counsels against anticipating hypothetical situations in which the discretion of the trial judge [in declaring a mistrial] may be abused and so call for the safeguard of the . . . [prohibition of double jeopardy]. . . ." It suffices for present purposes to note that we do not here deal with the situation in which the accused's desire to risk the original jury has been disregarded, by the decision of the court to terminate the trial over his objection, and we find no occasion to express a view as to the result which would obtain under such circumstances. Cf. *United States v. Tateo,* 377 U.S. 463, 468, 473-74, 84 S. Ct. 1587, 1590, 1593 (1964) (GOLDBERG, J., dissenting).

In the instant case, while we do not condone the conduct of the district attorney, the record inevitably compels the conclusion that the prejudicial remarks were not calculated to precipitate the mistrial. The evidence of appellant's guilt of the crime of murder in the first degree and of the other offenses charged was abundant and convincing. Under such circumstances,

the district attorney's conduct may be accounted for as the product of an excess of zeal and as an attempt to underscore a case already likely to result in conviction. Thus, we are not here confronted with a case in which the prosecution has invited the mistrial in order to secure another, possibly more favorable opportunity to convict the accused. Cf. *Gori v. United States,* 367 U.S. 364, 369, 81 S. Ct. 1523, 1526-27 (1961).

Were the trial judge of the view that the prosecution intentionally sought to infect the proceedings in order to abort the trial, the court's decision to terminate with prejudice to the Commonwealth's right to reprosecute would be entitled to great weight in the event that the issue was presented on review. This, however, is not such a case and the policy of double jeopardy designed to guard against such oppression has no present application.

Accordingly, we are left confronted with the issue of whether the burden imposed upon appellant by requiring him to answer for his crimes in a second trial is sufficient to warrant immunization from further prosecution. We are of the view that a just and humane administration of the law requires no such conclusion on this record.

In accommodating the various considerations which impinge upon and affect the resolution of this case, we may not permit an undiscriminating application of double jeopardy to defeat the interest of society in preventing the guilty from going unpunished. See Notes, Double Jeopardy: The Reprosecution Problem, 77 Harv. L. Rev. 1272, 1274 (1964); cf. *United States v. Tateo,* 377 U.S. 463, 466, 84 S. Ct. 1587, 1589 (1964); *Gori v. United States,* 367 U.S. 364, 81 S. Ct. 1523 (1961); *Wade v. Hunter,* 336 U.S. 684, 69 S. Ct. 834 (1949). Where, as here, the risk of harassment is slight and that of improper acquittal great, the state's interest in securing convictions must be given fair and consid-

erable weight. Notes, Double Jeopardy: The Reprosecution Problem, 77 Harv. L. Rev. 1272, 1274 (1964).

Moreover, very practical considerations militate strongly against the adoption of so strict a stance as to preclude appellant's conviction under the circumstances here present. Such rigidity might well operate to deter a trial judge from terminating an irrevocably flawed proceeding in order to avoid immunizing an obviously guilty defendant from further prosecution, thus compelling the parties to endure a probably inconclusive trial. Id. at 1279-81; cf. *United States v. Tateo,* 377 U.S. 463, 466, 84 S. Ct. 1587, 1589 (1964); *Gori v. United States,* 367 U.S. 364, 369, 81 S. Ct. 1523, 1527 (1961).[13] Neither the interest of the accused nor the state would be served were we to make our trial courts "unduly hesitant conscientiously to exercise their most sensitive judgment—according to their own lights in the immediate exigencies of trial—for the more effective protection of the criminal accused." *Gori v. United States,* supra at 369-70, 81 S. Ct. at 1527.

Our conclusion that double jeopardy does not bar the instant conviction is reinforced by the treatment of cases reversed on appeal. If the trial judge concludes that the flaw does not warrant termination of the proceeding and a conviction results which is reversed on appeal, reprosecution may follow. *United States v. Ball,* 163 U.S. 662, 16 S. Ct. 1192 (1896); cf. *United States v. Tateo,* 377 U.S. 463, 84 S. Ct. 1587 (1964); *Commonwealth v. Scoleri,* 415 Pa. 218, 202 A. 2d 521 (1964); *Commonwealth v. Melton,* 406 Pa. 343,

---

[13] The defendant, of course, also runs the risk that his conviction will be affirmed on appeal. "This risk is enhanced by the weight which an appellate court may attach to the fact that the trial judge, who had an opportunity to observe the impact of the prejudicial conduct on the jurors, did not terminate the proceeding." Notes, Double Jeopardy: The Reprosecution Problem, 77 Harv. L. Rev. 1272, 1279-80 (1964).

178 A. 2d 728, cert. denied, 371 U.S. 851, 83 S. Ct. 93 (1962); *Commonwealth ex rel. Patrick v. Banmiller,* 398 Pa. 163, 157 A. 2d 214 (1960).

Where a mistrial is declared in the face of an accused's desire to continue the trial, reprosecution may be precluded, even though had the case proceeded to verdict and been reversed on appeal, no barrier to retrial would exist. This situation, although anomalous, is tolerable, since, in the former case, the accused is deprived of his right to have the original jury consider his case and of the possibility of an acquittal, notwithstanding the conduct of the prosecution. See *United States v. Tateo,* 377 U.S. 463, 468, 473-74, 84 S. Ct. 1587, 1590, 1593 (1964) (GOLDBERG, J., dissenting). Here, where appellant elected to bypass the original jury, different considerations are present.

To conclude that appellant may not be retried under the circumstances here present would require that every accused be granted immunity from punishment where a defect has occurred at trial sufficient to constitute reversible error. Cf. *United States v. Tateo,* 377 U.S. 463, 466, 84 S. Ct. 1587, 1589 (1964). Such a result would be a high price indeed to extract from society, a price which courts have to date considered to outweigh the burden of retrial. See *United States v. Tateo,* 377 U.S. 463, 84 S. Ct. 1587 (1964); *United States v. Ball,* 163 U.S. 662, 16 S. Ct. 1192 (1896); *Commonwealth v. Melton,* 406 Pa. 343, 178 A. 2d 728, cert. denied, 371 U.S. 851, 83 S. Ct. 93 (1962); *Com. ex rel. Farrow v. Martin,* 387 Pa. 449, 127 A. 2d 660, cert. denied, 353 U.S. 986, 77 S. Ct. 1288 (1956).

We do not view the decision of the Supreme Court of the United States in *Downum v. United States,* 372 U.S. 734, 83 S. Ct. 1033 (1963), to compel a conclusion contrary to that reached today. *Downum* involved' the discharge of a jury at the request of the prosecutor over the objection of the accused. As we have previ-

ously indicated, such a circumstance raises considerations not here present and *Downum* is for that reason inapposite to this appeal.

We are of the view that the invocation of double jeopardy under the circumstances of the present case "would create an insuperable obstacle to the administration of justice in many cases in which there is no semblance of the type of oppressive practices at which . . . [the] prohibition is aimed." *Wade v. Hunter,* 336 U.S. 684, 688-89, 69 S. Ct. 834, 837 (1949). Accordingly, for the reasons heretofore stated, we hold appellant's conviction not precluded by reason of double jeopardy.

Appellant also seeks to challenge his conviction on the ground that a confession, allegedly obtained under constitutionally tainted circumstances, was improperly admitted at trial. It is urged that the confession was obtained as the result of coercion and in violation of the mandate of *Escobedo v. Illinois,* 378 U.S. 478, 84 S. Ct. 1758 (1964).

In *Johnson v. New Jersey,* 384 U.S. 719, 86 S. Ct. 1772 (1966), the Supreme Court of the United States held that the direction contained in *Escobedo* respecting the right to counsel at the pre-trial stage of criminal proceedings is not to be given retrospective application. Accord, *Commonwealth ex rel. Mullenaux v. Myers,* 421 Pa. 61, 217 A. 2d 730 (1966) ; *Commonwealth ex rel. Frazier v. Maroney,* 419 Pa. 361, 214 A. 2d 221 (1965) ; *Commonwealth ex rel. Knowles v. Rundle,* 419 Pa. 300, 213 A. 2d 635 (1965) ; *Commonwealth ex rel. Shaffer v. Cavell,* 419 Pa. 218, 213 A. 2d 380 (1965) ; *Commonwealth v. Negri,* 419 Pa. 117, 213 A. 2d 670 (1965). Appellant's trial having occurred prior to the decision in *Escobedo,* he may not predicate a claim to relief in reliance thereon. *Johnson v. New Jersey,* 384 U.S. 719, 86 S. Ct. 1772 (1966).

Accordingly, appellant had no absolute right to the assistance of counsel immediately upon his apprehension and arrest. *Crooker v. California,* 357 U.S. 433, 78 S. Ct. 1287 (1958); *Cicenia v. LaGay,* 357 U.S. 504, 78 S. Ct. 1297 (1958); *Commonwealth ex rel. Mullenaux v. Myers,* supra.[14] As we stated in *Mullenaux,* supra at 65, 217 A. 2d at 732, "the absence of counsel at appellant's interrogation following his arrest may not be deemed violative of his Fourteenth Amendment rights unless he was 'so prejudiced thereby as to infect his subsequent trial with an absence of "that fundamental fairness essential to the very concept of justice." ' " (Citations omitted). The present record does not suggest or support the conclusion of such prejudice. Cf. *Commonwealth ex rel. Mullenaux v. Myers,* supra.

Finally, at trial, no objection was interposed to the introduction of the confession now asserted to have been obtained by means of duress and coercion. Under such circumstances, we think the considerations stated by this Court in *Commonwealth ex rel. Mullenaux v. Myers,* supra, rule the instant case. As we there stated, "had the issue been properly raised . . . [at trial], the

---

[14] Although the Supreme Court of the United States held in *Miranda v. Arizona,* 384 U.S. 436, 479 n.48, 86 S. Ct. 1602, 1630 n.48 (1966), that "Crooker v. California, 357 U.S. 433 (1958) and Cicenia v. LaGay, 357 U.S. 504 (1958) are not to be followed," that same Court subsequently held that the principles set forth in *Escobedo v. Illinois,* 378 U.S. 478, 84 S. Ct. 1758 (1964), and *Miranda* are not entitled to retrospective application. *Johnson v. New Jersey,* 384 U.S. 719, 86 S. Ct. 1772 (1966).

Thus, in the instant case, in which trial was commenced prior to the decision in *Escobedo* on June 22, 1964, the standard for determining the admissibility of a confession challenged solely on the ground of denial of counsel during custodial police interrogation remains as set forth in *Crooker v. California,* supra, and *Cicenia v. LaGay,* supra. See *Johnson v. New Jersey,* supra; *Miranda v. Arizona,* supra.

voluntariness of the confession could have been then litigated and the confession excluded, if found tainted, without the invalidation of the entire proceeding." Id. at 63, 217 A. 2d at 732.

In the instant case, as in *Mullenaux,* we find nothing in the record of this case which would justify a departure from the contemporaneous objection rule to permit appellant to challenge his confession at this late date. The record amply supports the conclusion that no injustice will result by precluding the present challenge.

Order affirmed.

Mr. Justice EAGEN concurs in the result.

Mr. Justice COHEN took no part in the consideration or decision of this case.