Commonwealth *v.* Wright, Appellant.

Argued April 22, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*George B. Angell,* with him *Angell & Angell,* for appellant.

*William F. Potter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE COHEN, July 2, 1970:

This is an appeal by Edwin Wright, appellant, from the decision of the Superior Court, 216 Pa. Superior Ct. 773, 260 A. 2d 503 (1970), affirming per curiam the judgment of sentence of the Court of Quarter Sessions (now the Court of Common Pleas, Criminal Division) of McKean County. The only question before us is whether the double jeopardy clause in the Fifth Amendment to the United States Constitution, made applicable to the states by *Benton v. Maryland,* 395 U.S. 784 (1969), bars this prosecution.

On March 13, 1967 a jury was chosen, and appellant's first trial began. During that first day of trial appellant requested a ruling in advance of any offer by the Commonwealth as to the admissibility of his prior record in the event he elected to testify on his own behalf. The lower court ruled that the District Attorney could submit appellant's record in the form in which it was presented for consideration to the court. This ruling, however, was reversed at the start of the second day of trial. The record discloses the following statement by the court: "However, overnight in reviewing the law and studying the matter, the Court this morning felt that we were wrong in that position in the fact that the record was not certified or exemplified and that therefore in the form that the record was available to the Commonwealth we felt this morning and so informed counsel . . . that it would be subject to the objection made by counsel for the defendant . . . the Court indicated that . . . we would have to rule adversely to the Commonwealth if that record was offered."

After appellant had testified on direct examination and after cross-examination had proceeded for a short while, the District Attorney, completely out-of-context of his previous questions, stated, "Your Honor, I want to offer into evidence the record of this defendant con-

sisting of six burglaries". (Appellant was being tried on a charge of burglary). This led to extensive discussions at side bar during the course of which appellant moved for the withdrawal of a juror. The court granted the motion.

On June 15, 1967, the date appellant's second trial was to begin, appellant filed a motion for dismissal of the indictment and acquittal. This was denied, and appellant was found guilty by the jury. After denial of post-trial motions and affirmance of the judgment by the Superior Court, appellant filed an allocatur petition which we granted.

From our decisions in *Commonwealth v. Metz*, 425 Pa. 188, 228 A. 2d 729 (1967), *Commonwealth v. Warfield*, 424 Pa. 555, 227 A. 2d 177 (1967), and *Commonwealth ex rel. Montgomery v. Myers*, 422 Pa. 180, 220 A. 2d 859 (1966) has developed the rule that a defendant who has moved for a mistrial in response to prosecutorial misconduct may be retried if the prosecution has not invited the mistrial in order to secure another, possibly more favorable opportunity to convict the accused.[1] This is because society's interest in preventing the guilty from going unpunished out-weighs the risk of harrassment and the burdens the defendant will incur in going through a second trial.

Before applying this rule to the facts before us, it is necessary to determine whether federal double jeopardy standards, which are now applicable as a result of *Benton v. Maryland*, supra, require the application of a

---

[1]Some have suggested an even stronger rule. "Moreover, deliberate prosecutorial misconduct, designed to prejudice the jury or force the defense to move for mistrial, arguably should justify dismissal of the indictment. The prosecutor, as a public official, does not play a purely adversary role and should be deterred as strongly as possible from abusing his authority by introducing even minor injustices into the adjudicatory process." 82 Harv. L. Rev. 1752, 1756 (1969).

different test. The United States Court of Appeals for the District of Columbia Circuit, the Fifth Circuit and the Seventh Circuit have directly faced the question whether a defendant who moves for a mistrial may be retried, and all three have held that he may. *Gregory v. United States*, 410 F. 2d 1016 (D.C. Cir. 1969); *Leigh v. United States*, 329 F. 2d 883 (D.C. Cir. 1964); *Vaccaro v. United States*, 360 F. 2d 606 (5th Cir. 1966);[2] *United States v. Burrell*, 324 F. 2d 115 (7th Cir. 1963).[3] In general these cases just state that a defendant who moves for a mistrial may be retried, and they do not include the detailed reasoning and careful balancing of interests that we included in our decision in *Commonwealth ex rel. Montgomery v. Myers,* supra. In addition the Third Circuit Court of Appeals, in *United States ex rel. Montgomery v. Brierley,* 414 F. 2d 552 (3d Cir. 1969), specifically stated that our determination of Montgomery's double jeopardy claim (in that case the Third Circuit was ruling on Montgomery's federal habeas corpus petition) was in full accord with federal constitutional standards. The court further stated,

---

[2]The Fifth Circuit and the Third Circuit, in *United States ex rel. Montgomery v. Brierley,* see below, relied on *Gori v. United States*, 367 U.S. 364 (1961). For an interesting discussion of the continued validity of *Gori* in light of *Downum v. United States*, 372 U.S. 734 (1963) and of the differences between the cases, see Hall, Kamisar, LaFave, and Israel, Modern Criminal Procedure 1221-24 (3d ed. 1969).

[3]Consider also these statements by the Fourth Circuit, "It is established beyond question that, absent unfair conduct on the part of the prosecuting attorney or the court, mistrial of a criminal case does not prevent subsequent retrial and conviction." *United States v. Davis*, 369 F. 2d 775, 777 (4th Cir. 1966). "Any premature termination of a prosecution, neither sought nor acquiesced in by the defendant, constitutes a bar to retrial unless the reason for aborting the proceeding falls squarely within a narrowly defined exception to the Fifth Amendment's prohibition of double jeopardy." *United States v. Smith*, 390 F. 2d 420, 424 (4th Cir. 1968) (Concurring and Dissenting opinion of SOBELOFF, J.)

414 F. 2d at 558: "This is not to suggest that in every case where a defendant moves for a mistrial as a result of prosecutorial misconduct a claim of double jeopardy will be barred, but under the circumstances of the present case we agree with the careful reasoning of Justice Roberts that the double jeopardy claim should be rejected." While we are given no guidance as to what circumstances would bar a second trial and while the Third Circuit seems to have taken a narrower view of the states' ability to retry a defendant than the other circuits, what is both clear and important is that we need not alter the principles we have developed in response to *Benton v. Maryland,* supra.

Turning to the case before us, the record is clear that the District Atorney from the moment he began his cross-examination intended to offer into evidence appellant's prior record. The cross-examination began as follows: "Q. Mr. Wright, do you use the middle initial 'J', or do you spell it out? A. J-A-Y. Q. Can you tell us your social security number? A. My social security number? Q. Yes. Do you have your card with you? A. No. It is 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." The District Attorney then went on to question appellant concerning the events on the evening in question. After the prosecutor made the offer of the record, he made the following statement to the court: "I made the request then [yesterday] to allow me the evening to obtain a certified copy of this record, which I could have done, and I was not afforded that opportunity. This is the record from the Pennsylvania State Police, the Record Identification Division at Harrisburg, Pennsylvania, which shows the defendant, shows his social security number, and shows the record sent to us." Therefore it seems clear that the questions concerning the spelling of his name and his social security number were intended to form a foundation for the introduction of the non-certified copy of the record.

It also seems clear that the prosecutor knew or should have known that the court would rule adversely on its offer. He did state, "The Commonwealth's understanding of this matter was that the Court was going to rule on this offer when it was made." The court responded that it had told counsel that it would rule adversely to the Commonwealth if the record were offered and that it "assumed that the Commonwealth, knowing that the ruling would be adverse by the Court, would either offer it at side bar for the record or would not offer it at all."

Regardless of this, the court below was "satisfied that the District Attorney's remarks that led to the mistrial were not made for the specific purpose of achieving that result to afford the Commonwealth a second chance to try a weak case. An examination of the testimony offered by the Commonwealth at both trials will clearly indicate that the Commonwealth's evidence is strong and very persuasive." Determining the motives of the prosecutor is quite similar to deciding a question of the credibility of a witness. The trial judge who is on the scene and who has observed the individuals and the events is in a better position to decide this question than are we who have only a dry record from which to work although we recognize that even for the trial judge this is a difficult task. See Note, 11 U.C.L.A. L. Rev. 407, 411 (1964). In *Commonwealth ex rel. Montgomery v. Myers,* 422 Pa. at 191, we stated that we would give great weight to a trial judge's decision to terminate with prejudice to the Commonwealth when it found the prosecution intentionally sought to abort the trial. There seems no reason to give the trial court's decision great weight when it finds the prosecutor's motives to be the proscribed ones and to give it less weight when it finds the motives to be otherwise. Therefore unless the record itself indi-

cates the relevant motives, we will affirm the action of the trial judge absent an abuse of discretion.

While we may speculate that the District Attorney made the offer in order to get the information before the jury and hoped that the court would respond only with a cautioning instruction, the record gives no firm support to this or any other theory.[4]

The record does support the trial court's finding that the Commonwealth's evidence at the first trial was strong and persuasive, and therefore we find no abuse of discretion in the lower court's finding that there was no intent on the prosecutor to cause a mistrial intentionally so that he could try again under more favorable circumstances to obtain a conviction.

The judgment of sentence is affirmed.

Mr. Justice ROBERTS concurs in the result.

---

[4]The only relevant statement by the District Attorney is as follows: "Well, let me say this—that I feel that the jury should have the benefit of knowing that the Commonwealth was prohibited from putting this record in. This whole thing went to yesterday. Everything was all set and I had my opportunity to do these things, and I was denied these opportunities. I made motion before I mentioned anything about it. They could have objected."