371 A.2d 937
**COMMONWEALTH of Pennsylvania**
**v.**
**Miguel RIOS, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 13, 1976.

Decided March 31, 1977.

480

John W. Packel, Assistant Public Defender, Philadelphia, for appellant.

Steven H. Goldblatt and Deborah E. Glass, Assistant District Attorneys, Philadelphia, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

HOFFMAN, Judge:

Appellant contends that the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, made applicable to the states through the Due Process Clause of the Fourteenth Amendment, barred his retrial. We disagree and, therefore, affirm the convictions on the indictments charging robbery,[1] assault,[2] and conspiracy.[3] Appellant also contends that the evidence was insufficient to convict him of possession of instruments of crime.[4] We agree and, therefore, arrest judgment of sentence on this indictment. Finally, we remand for re-sentencing.

On May 25, 1974, at 8:30 p. m., the complaining witness left his store at Broad Street and Ridge Avenue, Philadelphia, to join a friend for dinner. After dinner, while the complainant was driving home, his 1964 Ford

1. The Crimes Code, Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1; 18 Pa.C.S. § 3701.
2. The Crimes Code, supra; 18 Pa.C.S. §§ 2701 & 2702.
3. The Crimes Code, supra; 18 Pa.C.S. § 903.
4. The Crimes Code, supra; 18 Pa.C.S. § 907.

truck broke down at 13th and Spring Garden Streets. While the complainant attempted to restart his truck, four men drove up in a red sedan and offered assistance. After pushing the truck about two blocks, the men emerged from the car and attacked the complainant. Appellant wrapped a rope around the victim's neck and beat him with a hammer while the other men assaulted him with their fists, a knife, and a screwdriver. After one of the four took the victim's wallet containing 400 dollars, the men fled.

Later that night, the Philadelphia police apprehended appellant and two companions based upon the victim's descriptions of the car and the robbers. At police headquarters, the victim identified appellant as the driver of the red sedan. The police secured a warrant for a search of the car and the seizure of appellant's clothing.

On June 13, 1974, a grand jury indicted appellant on charges of robbery, possession of an instrument of crime, aggravated assault, and conspiracy. Appellant filed motions to suppress all identification testimony, appellant's statements, and certain clothing seized pursuant to the warrant. On December 2, 1974, after a hearing, the lower court suppressed the out-of-court identification, appellant's statements, and the physical evidence because the Commonwealth stipulated that the identification procedures used by the police were suggestive. On January 10, 1975, the court ruled that an in-court identification by the victim would be allowed.

On June 26, 1975, appellant's trial commenced. After the victim and the arresting officer testified, the Commonwealth called the detective who had taken appellant's statements. The Assistant District Attorney began questioning the detective about the suppressed statements. Appellant objected and moved for a mistrial; the lower court granted this motion.

On July 15, 1975, appellant filed a motion to dismiss the indictments on the ground that retrial would violate

his constitutional right not to be twice placed in jeopardy. The lower court held a hearing on September 10, 1975, and heard testimony from the appellant's counsel and the Assistant District Attorney who conducted the trial. At the conclusion of the hearing, the court denied appellant's motion. The court found that the Assistant District Attorney who represented the Commonwealth at the suppression hearing had inadvertently failed to mark the case file with the customary notations that the confession was suppressed. The court also found that the Assistant District Attorney who tried the case was negligent, but not guilty of a bad faith effort to abort the trial.

On October 22, 1975, appellant waived a jury trial and was tried. The court found appellant guilty of all counts. After the court denied appellant's written postverdict motions, it sentenced appellant to serve a term of 11½ to 23 months' imprisonment on the bill charging robbery, a consecutive term of 6 to 23 months' imprisonment for aggravated assault, a consecutive term of 3 years' probation for possession of instruments of crime, and a concurrent term of 3 years' probation for conspiracy.

▓ Appellant first contends that the guarantees of the federal constitution against double jeopardy bar his retrial. In *Commonwealth ex rel. Montgomery v. Myers*, 422 Pa. 180, 220 A.2d 859 (1966), the appellant petitioned for a writ of habeas corpus on the grounds that he had been retried in violation of the Double Jeopardy Clause. Appellant's first trial ended in a mistrial when the district attorney, in his summation, referred to the appellant as a "pro" or an "old pro". The Supreme Court held that appellant's second trial did not fall within the constitutional proscription against being twice placed in jeopardy: "Of far greater difficulty is the problem presented, as in the instant case, where the mistrial results from misconduct on the part of the prose-

cutor. Very little attention has been accorded the issue by courts which have considered the problem, double jeopardy most usually being held inapplicable by reason of the accused's consent, by moving for a mistrial, to the termination of the initial proceeding. . . . To the extent that such expressions are intended to embody notions of 'waiver', we are unable to view them with approval. To hold that an accused must barter away his constitutional protection against the oppression of multiple prosecution in order to avoid the hazards of continuing with a proceeding which by hypothesis has been tainted so as to prejudice his right to a fair trial would not be consistent with the administration of justice.

"Yet, at the same time, the fact that the defendant has moved for a mistrial or otherwise consented to the termination of the proceeding is a factor to be considered in determining whether the circumstances call for the application of double jeopardy. In such a case, the accused, by moving for the withdrawal of a juror, has made the decision to bypass the panel then constituted and to forego the possibility that the jury might acquit, notwithstanding the misconduct which has marred the trial. . . .

"In the instant case, while we do not condone the conduct of the district attorney, the record inevitably compels the conclusion that the prejudicial remarks were not calculated to precipitate the mistrial. The evidence of appellant's guilt of the crime of murder in the first degree and of the other offenses charged was abundant and convincing. Under such circumstances, the district attorney's conduct may be accounted for as the product of an excess of zeal and as an attempt to underscore a case already likely to result in conviction. Thus, we are not here confronted with a case in which the prosecution has invited the mistrial in order to secure another, possibly more favorable opportunity to convict the accused. Cf. *Gori v. United States,* 367 U.S. 364, 369, 81 S.Ct. 1523, 1526–27 [6 L.Ed.2d 901] (1961).

"Were the trial judge of the view that the prosecution intentionally sought to infect the proceedings in order to abort the trial, the court's decision to terminate with prejudice to the Commonwealth's right to reprosecute would be entitled to great weight in the event that the issue was presented on review. This, however, is not such a case and the policy of double jeopardy designed to guard against such oppression has no present application." *Commonwealth ex rel. Montgomery v. Myers,* supra, 422 Pa. at 189–91, 220 A.2d at 864–65. See also, *United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); *Commonwealth v. Wright,* 439 Pa. 198, 266 A.2d 651 (1970); *Commonwealth v. Metz,* 425 Pa. 188, 228 A.2d 729 (1967); *Commonwealth v. Warfield,* 424 Pa. 555, 227 A.2d 177 (1967).

We believe that *Commonwealth ex rel. Montgomery v. Myers,* supra, controls this case. There is absolutely no evidence which points to the conclusion that the Assistant District Attorney deliberately set out to abort the first trial in order to bolster his case or to secure a more favorable jury panel. The court which heard appellant's application to dismiss the indictments concluded that the Assistant District Attorney acted in good faith. Even the appellant concedes that the Commonwealth has, at worst, been guilty of "gross negligence". We, therefore, conclude that the lower court properly denied appellant's motion to dismiss the indictments.

Appellant also contends that the evidence was insufficient to convict him of possession of instruments of a crime.[5] Specifically, he argues that a hammer is not an instrument of crime, even if it is used in committing an assault.

---

5. The Commonwealth argues that appellant failed to appeal from the conviction of possession of instruments of crime. It argues, therefore, that the issue is not before this Court. On January 28, 1977, this Court allowed an amendment to the caption of the appeal.

Section 907(a) of the Crimes Code provides: "A person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally." Subsection (c) defines an instrument of crime as: "(1) Anything specially made or specially adapted for criminal use; or (2) anything commonly used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful purposes."

When determining the legislative intent behind a particular statute, we are required to determine the mischief to be remedied and to give effect, if possible, to every part of an act. Statutory Construction Act of 1972, Nov. 25, 1970, P.L. 707, No. 230, added Dec. 6, 1972, P.L. 1339, No. 290, § 3, imd. effective; 1 Pa.C.S. § 1921. In ascertaining the intention of the Assembly, we are required to presume that it did not intend an absurd or unreasonable result. Statutory Construction Act of 1972, supra; 1 Pa.C.S. § 1922.

In the instant case, the lower court determined that appellant "specially adapted" the hammer when he employed it in the commission of an assault. Such an interpretation renders the definition of "instrument of crime" completely unnecessary. The legislature might just as well have provided: "A person commits a misdemeanor of the first degree if he possesses *any object* with the intent to employ it criminally." Applying this analysis, a pen would be the criminal instrument of a forger. A credit card could become a burglary tool if it were used to open a door. A rolling pin or candlestick holder could be an instrument of crime in the hands of an attacker. Our legislature did not intend to criminalize the possession of such innocent objects. See *Commonwealth v. Collins*, 226 Pa.Super. 177, 313 A.2d 322 (1973) (Dissenting Opinion by SPAETH, J.).

[3] When the Assembly included § 907 under the Inchoate Crimes chapter of the Crimes Code, it intended to

criminalize the possession of certain readily recognizable instrumentalities of crime under circumstances demonstrating the possessor's intent to commit a crime. Our legislature clearly intended that the possession of certain objects combined with other circumstances, although not arising to the level of a criminal attempt,[6] should be criminalized because the conduct suggests that a more serious crime is imminent. Thus, the legislature established two alternative criteria for determining whether an object is an instrument of crime. The object must be one which is regularly used by criminals or it must be one which is physically altered in such a fashion as to demonstrate a criminal objective. The possession of such an object in combination with other circumstances suggesting a criminal objective constitutes a misdemeanor under § 907.

In the instant case, appellant committed an assault with a hammer. The hammer was not reshaped or specially constructed to inflict bodily injury. Thus, it could not be an instrument of crime as defined by § 907(c)(1). Furthermore, hammers, unlike guns, knives and similar implements, are simply not so commonly used in the commission of crimes, that the legislature intended to prohibit their possession. We, therefore, conclude appellant did not possess an instrument of crime as defined by § 907(c)(2). We are constrained to find the evidence insufficient to convict appellant of possession of instruments of crime.

When this Court finds that the evidence is insufficient to sustain a conviction on one bill of indictment, we are required to remand to the lower court for resentencing on the valid convictions. *Commonwealth v. Lockhart*, 223 Pa.Super. 60, 296 A.2d 883 (1972).

Judgment of sentence on No. 837 is arrested. Case remanded for resentencing on Nos. 836, 838, and 839.

6. The Crimes Code, supra; 18 Pa.C.S. § 901.