## Sadowski Estate.

Argued April 10, 1945. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*J. S. Jiuliante,* for appellant.

*George J. Biebel,* with him *Thomas E. Doyle,* for appellee.

PER CURIAM, September 26, 1945:

Appellant married Nicholas Sadowski in 1933; each had children by a former marriage. They lived together as husband and wife, except for seven months of the second year of their marriage, until some time after December 29, 1943, when he became bedfast and one of his daughters took him to her home. He died there, less than two weeks later, on January 15, 1944. Decedent had been taken to a lawyer's office by one of his daughters seventeen days before his death where he made a will. In it the sole bequest to his wife was $650, an accumulation of joint savings, in a bank account in their names as

husband and wife. The entire remainder of his estate he gave to his seven children. As survivor, the bank account passed to appellant by law, and it is obvious that the intent of the will was to bar her from any share in his estate.

Decedent's property consisted of a small house and lot in Erie where he and appellant lived; there was no other estate. Appellant elected to take against the will and petitioned for her widow's exemption out of this real estate. Thereafter Helen Kwiatkowski, one of decedent's daughters, produced a bond and a recorded mortgage on the land for $2,100, given by decedent to her on August 14, 1940. The executor *moved* the court for "a rule to show cause why [her] secured claim . . . in the nature of mortgage on real estate known as 220 Wallace Street, Erie, Pennsylvania . . . should not be adjudged a valid debt of the Estate and paid." The rule granted on this motion and the widow's petition for exemption were heard together. From the testimony taken on these issues the court found "that the daughter's claim based upon the bond and mortgage is a valid claim against the estate" and further, that appellant had forfeited her right to an exemption as widow by conduct which terminated the marriage relation "a few weeks before decedent's death." The court ordered distribution accordingly, although there was no fund to distribute. We are of the opinion that appellant's claim of exemption as widow should have been allowed and the finding that the mortgage was a valid lien against decedent's land, was gratuitous.

The widow's exemption is not an interest passing under the intestate law. It is a gratuity payable to the widow unless she has "forfeited her rights". Fiduciaries Act of June 7, 1917, P. L. 447, §12(a), 20 PS 471; *Hildebrand's Est.*, 262 Pa. 112, 104 A. 866. Forfeiture follows as an incident where the family relation has ceased to exist. The right may be forfeited by abandonment, without such reasonable cause as would entitle the wife to a divorce, (*Nye's Appeal*, 126 Pa. 341, 17 A. 618) by de-

sertion, by divorce, by voluntary separation, by antenuptial or post nuptial agreement, by re-marriage or long delay in asserting the right. *Bell's Estate,* 139 Pa. Superior Ct. 11, 10 A.2d 835; In Re: *Estate of John Balog Fenyo,* 105 Pa. Superior Ct. 560, 161 A. 606; *Mallory's Estate,* 300 Pa. 217, 150 A. 606. In *Odiorne's Appeal,* 54 Pa. 175, repeated in *Nye's Appeal,* supra, and in *Est. of A. S. Mehaffey,* 102 Pa. Superior Ct. 228, 156 A. 746, it is said: "The acts contemplate the case of a wife who lives with her husband till his death and faithfully performs all her duties to his family", as distinguished from "one who voluntarily separates herself from him and performs none of the duties imposed by the relation." The principle does not apply to the present case. The issue of forfeiture under the Fiduciaries Act does not involve an inquiry as to the quality of the services of a wife to her husband, related to any absolute standard, so long as the family relation persists.

We are unable to find support in the testimony for the conclusion of the court that the marital relation "had been terminated because of the misconduct and neglect by the widow necessitating [decedent's] removal from the widow's domicile to that of a daughter in order that he might receive proper care and nourishment." The parties had lived together for almost ten years. The separation is not chargeable to the wife but was brought about by the husband's children and against his will. Appellant had worked as a chambermaid in a hospital for twenty years. The hours of her employment were from 6 A.M. to 1:30 P.M. and her failure to quit work did not deprive her husband of necessary care. Decedent was able to be about and was not helpless until after December 29, 1943. He had not been working; the wife's earnings were the sole income available for the maintenance of the household, and the only reserve was the joint bank account above referred to. It is of some significance that in spite of quarrels about money matters and the not-unnatural willingness of the husband to favor his children in disposing of his property, yet in his

will made about two weeks before his death he referred to appellant as "my beloved wife, Amelia". Words must be given some meaning. Decedent's children admittedly were antagonistic to appellant. She and her witnesses denied the charge that she failed to give her sick husband necessary care. In any view, the testimony is insufficient in law to establish that the family relation had ceased to exist.

When the court found, though mistakenly, that appellant had forfeited her right to a widow's exemption, the jurisdiction of the court ended. On allowance of the exemption and in subsequent proceedings to enforce its payment out of the real estate, the validity of the mortgage given by decedent may become an issue, properly for the orphans' court. But the order in this proceeding, determining the status of the mortgage as a valid lien, was premature at least. That question was not then within the jurisdiction of the court.

The mortgagee at the hearing asserted that decedent had given the mortgage as security for money loaned by her to him. It was appellant's contention that it was given without legal consideration and fraudulently, in an effort to bar her interest under the intestate law, in the nature of dower. If there had been a fund before the court for distribution the question of the validity of the bond and the mortgage properly might have been decided in determining what appellant was entitled to as "statutory heir". Cf. *Tubbs's Appeal. Tubbs's Est.*, 161 Pa. 252, 28 A. 1109; *Rowe's Estate*, 22 Pa. Superior Ct. 597. The orphans' court has the power "to inquire into and determine all questions standing directly in the way of distribution": *Dundas's Estate*, 73 Pa. 474. But there was no account of the executor before the court for settlement; and the jurisdiction of the court had not attached to the real estate in any proceeding for the payment of decedent's debts, or otherwise. The orphans' court is one of limited jurisdiction and has only those powers given it by statute. *Peterson's Estate*, 146 Pa. Superior Ct. 87, 22 A. 2d 106; *Gilbert Estate*, 350 Pa.

13, 38 A. 2d 277. Mr. Justice SHARSWOOD in *Willard's Appeal*, 65 Pa. 265, referred to the principle, thus: "It would, perhaps, be a very convenient practice immediately upon the death of a decedent to have all possible questions which might arise upon the construction of his will, and in the settlement and distribution of his estate, settled by a decree of the Orphans' Court *in limine*, and by way of anticipation, and by an appeal to the Supreme Court from such a decree, have a final and conclusive determination of the subject. It would certainly save counsel a great deal of responsibility in giving advice. But the Acts of Assembly which confer jurisdiction on the Orphans' Court may be searched in vain for any such power".

Testator not only authorized, but positively directed, his executor to convert his real estate into cash, with authority to execute and deliver proper deeds of conveyance to the purchaser. Although the will contemplated conversion of testator's real estate (*Shareff's Estate*, 143 Pa. Superior Ct. 465, 17 A.2d 623) this did not give the court jurisdiction to determine the validity of an asserted lien against the property where, after denial of the claim for exemption, there was nothing more before the court than the widow's election to take against the will. The legal rights of a widow so electing are beyond her husband's control and attach at the moment of his death. As to this widow there was no will and no conversion. *Cunningham's Estate*, 137 Pa. 621, 20 A. 714. Her election revoked the will as to her. *Petterson's Estate*, 195 Pa. 78, 45 A. 654.

Appellant at the hearing, questioned the jurisdiction of the court. We have examined all of the acts of assembly which conferred jurisdiction on the orphans' court both before and after the constitution of 1873, and are of the opinion that appellant's objection on jurisdictional grounds should have been sustained.

Order reversed and the record is remitted for further proceedings in accordance herewith.