Duquesne Club *v.* Pittsburgh, Appellant.

Argued November 17, 1951. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

J. F. McKenna, Jr., Assistant City Solicitor, with him *Anne X. Alpern,* City Solicitor, for City and treasurer, appellants.

*Oscar G. Peterson,* Assistant School Solicitor, with him *Mortimer B. Lesher,* School Solicitor and *Niles Anderson,* Assistant School Solicitor, for School District and treasurer, appellants.

*Charles Denby,* with him *Carl E. Glock, Jr.,* and *Reed, Smith, Shaw & McClay,* for plaintiff, appellee.

OPINION BY HIRT, J., March 18, 1952:

Under the Act of June 20, 1947, P.L. 745, 24 PS §582.1, et seq., the School District of the City of Pittsburgh levied a Mercantile License Tax on Duquesne Club for the year 1948. The tax was based on the gross receipts from sales of food, liquor, cigars and cigarettes, and from the operation of its billiard room. Under Ordinance No. 488 of the City of Pittsburgh the city levied a like Mercantile License Tax against the appellee club for the year 1948 based also upon its gross receipts from the same services, except the sale of liquor. The ordinance was adopted on the authority of the Act of June 25, 1947, P.L. 1145, 53 PS §2015.1 which spe-

cifically excluded services subject to a State tax or license fee. Duquesne Club attacked the levy in each instance for want of power to tax. In the equity proceeding brought by the club against the city the lower court, after hearing, enjoined the collection of the tax as prayed for in appellee's bill. In the appeal of Duquesne Club, under the Act, from the mercantile tax levied by the appellant school district the assessment was adjudged null and void and was set aside. Identical principles control both of the present appeals; we will dispose of them together.

There is little dispute as to the facts: Duquesne Club is a corporation chartered by the common pleas of Allegheny County in 1881. The declared purpose for which it was incorporated is "the maintenance of a club for social enjoyment". It has a dues-paying resident membership of 1500 and non-resident members numbering 550. It maintains a modern club house on Sixth Avenue in the City of Pittsburgh where it supplies many services for the comfort and convenience of its members and their guests. In its numerous dining rooms it serves as many as 1000 meals each day. The gross receipts from the sale of food alone, for the year 1948, amounted to about $596,000. The prices charged in the regular dining rooms of the club for this and other service, though somewhat lower, are comparable with the prices in the best restaurants and hotels in Pittsburgh. The receipts from the other services supplied by the club, here involved, are substantial in amount. But because of the scope and exceptional quality of the services rendered, the operations of the club are conducted at a loss. The charge for food, for example, would result in a loss if weighted with any part of general overhead expense. The loss is absorbed by the dues paid by members of both classes. This fact has a bearing on the question whether Du-

quesne Club was operating a business subject to the tax but it is not decisive of the question. *Com. v. McKinley-Gregg Auto Co.,* 345 Pa. 544, 28 A. 2d 919.

The above Act of June 20, 1947 is the source of the text of the city ordinance which the city appropriated bodily from that Act. The language and provisions of both are almost identical except as to the rate of the tax—in the ordinance fixed at 2 mills and in the Act at 1 mill on annual gross sales. The tax is imposed by §4 of the Act, 24 PS §582.4 and by §4 of the ordinance, in this language: "Every person engaging in any of the following occupations or businesses . . . shall pay an annual mercantile license tax . . . at the rate set forth: . . . Retail vendors, or dealers in goods, wares and merchandise; all persons engaged in conducting restaurants or other places where food, drink or refreshments are sold, and all persons conducting places of amusement . . ."

The tax contemplated by the Act as well as by the ordinance in question is a levy imposed on the privilege of conducting a particular kind of business. It is an excise tax on the privilege of doing business and not a property tax on income, although measured by the whole volume of annual gross return from the business. Since a mercantile license tax is a tax on the mode of doing business it is not a tax upon persons. *Com. v. Thomas Potter, Sons & Co.,* 159 Pa. 583, 28 A. 492. Accordingly we are concerned here not with taxes on persons conducting restaurants but only on the privilege exercised by those engaged in the *business* of conducting restaurants and supplying other related services such as are here involved.

The present appeals are ruled by *Union League v. Ransley,* 39 Pa. Superior Ct. 514 in which it was held that the Union League of Philadelphia was not subject to a mercantile license tax on sales and charges to its

members. The Union League and the Duquesne Club, above all others in Pennsylvania, are comparable in purpose, scope of operation, and the high quality of the services supplied to their members. In 1909 when the Union League case was decided, taxation by mercantile licenses was a familiar method of raising revenue in vogue for many years. The tax questioned in that case was a mercantile license tax imposed by the Act of May 2, 1899, P.L. 184, in language almost identical with that of the Act and the ordinance in the instant cases "on vendors or dealers in goods, wares and merchandise . . ." In that case it was said: "The act of 1899 did not by any means inaugurate a new policy of taxation in this state. It was but the last of a long series of legislative enactments begun nearly a century ago, all of which were aimed at the taxation of *the business* of venders or dealers in merchandise. For the greater portion of that long period of time, social clubs have been in existence, some of them incorporated by special acts of the legislature before the adoption of the new constitution, and a multitude of them, since that time and the passage of the act of 1874, by the courts under the provisions of the last-named act. Of the existence of such clubs, the modes in which they were created, and the manner in which they fulfilled the purposes of their creation, the legislature could not have been ignorant. In no one of the many acts of assembly providing for the taxation of venders of merchandise has the legislature ever indicated its intention to include a social club as a member of the class intended to be taxed. Had there been at any time a popular demand for the taxation of any of those things which are the well-known incidents of club life, it is only fair to presume that the legislature would have responded. When, therefore, during such a long period of time; a line of legislative acts, dealing largely with the same subject-

matter, has been understood to adopt a policy seemingly acquiesced in by the legislature and the people, our courts naturally would be and ought to be slow in declaring that the intention of the legislature, in the last act of a long series, was different from that commonly understood and accepted during all the preceding years." (Emphasis added.)  In so holding this court applied a recognized rule of statutory construction of long standing.  The 1947 Act, supra, is at the root of the taxing authority sought to be invoked in both of the present appeals.  And in the light of the principle of the Union League case, unmodified by any decision of our Supreme Court,[1] the present appellee is entitled to the presumption that the Legislature in the Act of June 20, 1947, supra, dealing with the same subject matter as the Act of 1899 construed in the Union League case, intended the same construction to be placed upon the language of its 1947 enactment. Cf. §52(4) art. IV of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §552.

*Blauner's Inc. v. Philadelphia*, 330 Pa. 342, 198 A. 889, on which appellants strongly lean, involved the question of the validity of a city sales tax.  It was there held that the sale of food by a club to its members was subject to a sales tax just as food served in a public restaurant.  But in so holding the court distinguished a sales tax from the levies with which we are concerned,

---

[1] The construction of the Mercantile License Act in the *Union League Case* is referred to in *Blauner's Inc. et al. v. Phila. et al.*, 330 Pa. 342, 349, 198 A. 889, without criticism.  In *Fixl's Appeal*, 336 Pa. 177, 7 A. 2d 336, it is said: "It is clear, . . . that the real basis of the decision [in the Union League Case] was the fact that a social club, even when it furnishes cigars to its members for compensation, is not conducting a mercantile business under the Act of 1899."  The principle of the Union League case as an authority was not questioned.

in this language: "The sales tax is imposed upon the transaction whereby property is acquired; the mercantile tax is an imposition for the privilege of doing business." The distinction is real. That case, in so distinguishing a sales tax from a mercantile license imposed for the privilege of doing business, has been repeatedly followed and as recently as in *Rice Drug Co. v. Pittsburgh et al.,* 360 Pa. 240, 61 A. 2d 878. The Blauner's case and other authorities[2] relied on by appellants have no bearing on the controlling issue here involved.

Duquesne Club supplies the various services, here involved, not for profit but for the convenience and comfort of its members. In the sale of food, liquor, cigars and cigarettes or in making a charge to its members and their guests for the use of billiard and pool tables, the club therefore was not conducting a business subject to the Mercantile License Tax, under the city ordinance or in the 1947 Act. The lower court was right in so holding.

---

[2] In *Puntureri v. Pittsburgh School Dist.,* 359 Pa. 596, 60 A. 2d 42, a mercantile tax was held to be valid which had been assessed, under the 1947 Act, supra, against one who was engaged in the business of conducting a restaurant *for profit* in connection with the sale of liquor under a license issued by the Pennsylvania Liquor Control Board. So also in *Com. v. Thomas Potter, Sons & Co.,* supra, a manufacturer was found to be liable, as a dealer, for a Mercantile License Tax under similar legislation in conducting a store where it sold goods manufactured by others in addition to the products of its own manufacture. In *Com. v. McKinley-Gregg Auto Co.,* supra, the defendants' business was the sale of automobiles as a dealer. A Mercantile License Tax assessed against it under the Act of May 2, 1899, P.L. 184, supra, was held to be valid, notwithstanding emergency "freezing" regulations of the Federal government prohibiting the company from replenishing its stock during the license tax year. In all of these cases the license tax was properly assessed against dealers actually engaged in business for a profit.

The decree in number 114 and the order, in number 123 April Term, 1951, are affirmed, the former at the costs of appellant.

RHODES, P. J., and RENO, J., dissent.