## Lock Estate.

252

Argued May 22, 1968. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

*Howell C. Mette,* with him *Walter K. Swartzkopf,
Jr.,* and *Rhoads, Sinon & Reader,* for appellant.

*Ralph S. Snyder,* with him *Earl J. Melman,* and
*Melman, Gekas, Kusic & Nicholas,* and *Schnader, Har-
rison, Segal & Lewis,* for appellee.

OPINION BY MR. JUSTICE O'BRIEN, August 6, 1968:

This is the appeal of Esther Raechel Lock, surviving
spouse, from the decree of the Orphans' Court of
Dauphin County. That decree denied Esther Lock's
claim for the allowance to her of the family exemption
in the estate of Mike Lock, her deceased husband, and
vacated her election to take against the will of Mike
Lock.

Mike Lock died testate on January 24, 1961. His
will was duly probated on March 9, 1961. On July
28, 1961, Esther Lock, the widow, filed an election to
take against the will and on September 9, 1961, filed
an application for allowance of the family exemption.
On September 13, 1961, the executor of decedent's

estate filed his answer to the application for allowance of the family exemption and a petition for a rule to show cause why the election to take against the will should not be stricken, vacated and set aside. The parties filed appropriate pleadings and the consolidated matters were heard on November 28, 1961.

The record of the hearing established, inter alia, that the decedent, Mike Lock, and Esther Lock were married on May 25, 1952. The marriage was the second for each. The decedent at the time of the marriage was 58 years of age and his wife 54 years of age. Each had separate estates and children by a prior marriage. On May 22, 1952, the decedent and his betrothed entered into an antenuptial agreement providing in essence that neither party should have any rights in the estate of the other by reason of their marriage.

In the hearing in the court below, the estate introduced the antenuptial agreement and rested. Mrs. Lock contended there, as she does before this Court, that the antenuptial agreement was ineffective to bar her right of election against decedent's will and her right to the family exemption for two reasons. First, she claimed that the agreement was invalid from the outset since there was neither a reasonable provision for her nor full and adequate disclosure to her of decedent's assets at the time of execution of the agreement. See *Hillegass Estate*, 431 Pa. 144, 244 A. 2d 672 (1968). Secondly, even if initially binding on her, the agreement was no longer binding, she claimed, by virtue of its breach by decedent in failing to provide a home for her. The court below held that there was no breach and that there was adequate disclosure, and thus did not have to reach the question of whether there was a reasonable provision.[1]

---

[1] On this issue, the court stated: "As to the reasonableness of the provision for the wife, the widow's contention is that since there was no provision at all for her in the antenuptial agreement

We agree with the analysis of the court below holding that appellant failed to prove a breach of the agreement. However, we disagree with his disposition of the case as regards the disclosure issue. On the evidence properly before him, it was error for the court below to find a full and adequate disclosure. The court relied upon the testimony of Martin H. Lock, Esquire, son of the decedent and the attorney who drew the antenuptial agreement in dispute, as showing disclosure. Martin Lock testified that he disclosed to Mrs. Lock, prior to the signing of the agreement, the extent of Mr. Lock's property and net worth. However, the testimony of Martin Lock had been properly stricken from the record, and we hold that it was error for the trial judge, unilaterally or otherwise, to reinsert it.

To understand the situation, it is necessary to review the procedural posture of the case with more particularity. As stated above, the estate entered into evidence the antenuptial agreement and rested. The burden of going forward with evidence showing the invalidity of the agreement then fell upon the widow.

----

the provision is *per se* unreasonable. However, the fact that there is no provision at all for the wife may not necessarily evidence *per se* that the agreement is unreasonable. It may well be that where the parties are of advanced age and each has independent means, children of their [sic] own, and are [sic] of high business intellect, the fact that there is no provision for the wife may not be unreasonable *per se* since in such circumstances the desire of the parties may be primarily to protect their separate estates from the marital rights of each other at death. It may be that the mutuality of release in such a case would be ample provision in proper circumstances to sustain the agreement."

We agree with the view expressed by the court below, but would add that the widow's showing of no provision for her at all (along with inadequate disclosure) would certainly cast the burden upon the estate to show that this failure to provide was a reasonable provision under the test set forth in *Hillegass Estate*, 431 Pa. 144, 244 A. 2d 672 (1968).

She attempted to testify herself, but was confronted by the Dead Man's Act, Act of May 23, 1887, P. L. 158, §5(e), 28 P.S. §322. She then sought to introduce both her own and Mike Lock's testimony from a support proceeding. This testimony was also held to be inadmissible, because of the difference in nature of the two proceedings and because of the difference in subject matter. Mrs. Lock later attempted to call Martin Lock as on cross-examination. The court below denied her request, ruling that Martin Lock as an heir in the Estate of Mike Lock did not have a sufficient adverse interest to permit his being called as on cross-examination. Mrs. Lock then called Martin Lock on direct examination, and the damaging (to her) testimony as to disclosure came into evidence. Shortly thereafter, appellant rested her case, and the estate moved that the rule to vacate the election be made absolute, a motion in the nature of a motion for a non-suit. See *Kaufmann Estate,* 404 Pa. 131, 171 A. 2d 48 (1961) and *Groff's Estate,* 341 Pa. 105, 19 A. 2d 107 (1941). The court below took this motion under advisement, and the case remained in that posture for almost two years, until September 13, 1963. On that day, the court issued an order stating that it had erred in a number of respects in ruling upon evidence, as a result of which Mrs. Lock was prevented, to her detriment, from fully presenting her case. The court believed it had erred, inter alia, in: (1) Refusing to allow the former testimony of Mike Lock in the support hearing to be offered into the record for determination as to whether it could properly be considered an admission, and (2) Refusing to allow Martin Lock, Esquire, to be called as on cross-examination on the basis of adverse interest. In order to correct the errors, the court ordered that the record be opened and further hearing be held to allow the surviving spouse to offer further testimony, and set aside, temporarily, the mo-

tion in the nature of a nonsuit. The further hearing was held on June 30, 1964, at which time counsel for Mrs. Lock offered into the record the former testimony of Mike Lock. Then counsel for Mrs. Lock moved to strike the testimony of Martin Lock, given on direct examination, after the court had refused to allow him to be called as on cross-examination. The court then granted the motion to strike, stating: "The Court feels that the calling of Mr. [Martin] Lock on direct examination by counsel for Mrs. Lock was precipitated by the initial error in the Court's ruling that he would not be available to them as on cross-examination. It would seem that fairness would dictate that a correction of the initial error on the part of the Court should also be effective to restore Mrs. Lock to no less than the same position she would have been in had it not been for the Court's error. Therefore, we will grant the motion to strike the testimony of Martin Lock . . ." At this point, Mrs. Lock rested her case again, and the Court stated that the motion in the nature of a nonsuit resumed its place before the court.

The court granted the motion in the nature of a nonsuit,[2] in an opinion and order dated March 9, 1967. In order to do so, however, it had to consider the testimony of Martin Lock which it had stricken from the record. The court took this view of the course of proceedings in its opinion: "The motion [to strike] was granted, with the expectation by the court that Martin Lock would then be called as on cross-examination, as

---

[2] In its opinion, the court stated: "Although we feel that the granting of the estate's motion in this case would be proper, since our determination would be the same in any event, we prefer to proceed to a final determination on the merits without considering the motion." It should be apparent that whatever the judge chooses to call his decision, he is actually granting the motion in the nature of a motion for a nonsuit, since the estate had not presented evidence on the validity of the antenuptial agreement.

originally requested. Counsel for the widow, however, thereupon elected not to call Martin Lock as on cross-examination. Since that time Martin Lock has died and is unavailable as a witness for the estate. In light of the above circumstances it is now necessary to decide whether such testimony, clearly destructive of the widow's contention as to nondisclosure, should now be restored to the record and considered by this court. We are of the opinion that it should. In the first instance, the Court granted the motion to strike in fairness to the widow, since she called the witness on direct only after having been refused the right to call him as on cross-examination. In the final analysis, however, calling Martin Lock on direct was the voluntary act of the widow and not a strategy forced upon her by the court. The conduct of the trial and the prosecution of the case is the responsibility of counsel. Many evidentiary rulings are made by a trial judge and if each such ruling could properly be held responsible for the subsequent procedures elected by counsel in the conduct of his case, litigation would seldom have any finality. Next, it is a fact that at no time has the substance or competence of the testimony of Martin H. Lock been attacked. This court is convinced of the truth of the witness's testimony and his credibility is beyond reproach, Martin H. Lock having been a member of the Dauphin County Bar for many years and a former District Attorney for Dauphin County. Finally, while this court, concerned principally with a determination of the truth of the matter in dispute felt disposed out of fairness to the widow in the first instance to grant the motion to strike Martin Lock's testimony, which, unfortunately, completely misfired, we now feel that truth and justice can best be served only by restoring the stricken testimony for consideration in our final determination. . . ."

It was error for the court to restore the stricken testimony.[3] We agree with the court's original view that the calling of Martin Lock on direct was precipitated by the court's initial error in not permitting him to be called as on cross-examination. We might add that it was also precipitated by the error in not permitting Mike Lock's former testimony to be introduced. Three people were present at the signing of the ante-nuptial agreement. Mrs. Lock's lips were sealed by the operation of the Dead Man's Act. Mike Lock's, sealed by death, were sought to be opened by the introduction of his testimony at the support hearing. The appellant was placed in the unenviable position of having to call her adversary and hope. The errors of the Court having placed her in this position, it was altogether proper to strike the resulting testimony. Appellant should not have been required to sponsor Martin Lock and to suffer the accompanying disadvantages of such sponsorship. The court below, in its opinion stated that it was convinced of the truth of Martin Lock's testimony. This ignores the fact that truth is often revealed through the filter of cross-examination, and appellant had no opportunity to cross-examine. The court below was concerned lest Martin Lock's testimony be lost forever, as he has since died. Although of course it is unfortunate that this testimony is now unavailable, this is no reason to restore properly stricken evidence to the record. Important witnesses often die before trial; their absence should not lead the trial judge to relax the rules of evidence.

---

[3] Appellant makes much of the fact that this testimony was restored without her having a chance to contest the point. No doubt she would be entitled to such an opportunity. Appellee claims that although the docket entries do not reveal it, actually argument was heard on this question on October 26, 1964. Whether appellant was or was not given an opportunity to be heard is irrelevant, however, in light of our view that the testimony should not have been restored to the record.

260

Since this matter must be remanded to the Orphans' Court, it behooves us to consider certain other evidentiary issues, so that the court below will have some guidance.

The question arose below as to the admissibility of the former testimony, in the support hearing, of both Esther Lock and Mike Lock. Appellant urges that this testimony is admissible under the Act of May 23, 1887, P. L. 158, §9, 28 P.S. §327.[4] Under this statute, codifying the common law, *Wells v. Insurance Co.*, 187 Pa. 166, 40 Atl. 802 (1898), prior testimony of one now incompetent for any reason is admissible if certain conditions are met. These are: (1) the prior testimony must have been under oath with opportunity to cross-examine, (2) the parties in the two proceedings must be the same, (3) the subject matter must be the same, and (4) both proceedings must be civil proceedings. We need not consider which of the other requirements have been met, for it is quite clear that the nonsupport hearing was not a civil proceeding. *Philo v. Rought*, 5 Pa. D. & C. 2d 303 (1954), affirmed per curiam on the opinion of the court below, 385 Pa. 275, 123 A. 2d 168 (1956). Mrs. Lock's prior testimony was properly excluded.

[4] "Whenever any person has been examined as a witness in any civil proceeding before any tribunal of this commonwealth or conducted by virtue of its order or direction, if such witness afterwards die or be out of the jurisdiction so that he cannot be effectively served with a subpoena, or if he cannot be found, or if he become incompetent to testify for any legally sufficient reason, and if the party, against whom notes of the testimony of such witness are offered, had actual or constructive notice of the examination and an opportunity to be present and examine or cross-examine, properly proven notes of the examination of such witness shall be competent evidence in any civil issue which may exist at the time of his examination, or which may be afterwards formed between the same parties and involving the same subject-matter as that upon which such witness was so examined; . . ."

The case is not the same, however, with regard to Mike Lock's prior testimony. The court below has never made a final ruling on the admissibility of this testimony. It was originally excluded, but in the order of September 13, 1963, the Court indicated it had erred in "the refusal to allow the former testimony of Mike Lock to be offered into the record for determination as to whether or not it may properly be considered an admission." Then in the opinion, the court, as a result of its erroneous consideration of Martin Lock's testimony, found it unnecessary to rule on the admissibility of Mike Lock's prior testimony. Although Mike Lock's testimony shares the same infirmity as does Esther Lock's with regard to the prior testimony exception to the hearsay rule, nonetheless we have no doubt that it is admissible. Brown, Pennsylvania Evidence, speaks directly to this point, on page 192: "Bear in mind that testimony in a former proceeding may be admissible as an admission or as a declaration against interest or under the former testimony rule. It is not to be assumed that merely because testimony in a former proceeding does not qualify under [the former testimony] exception to the hearsay rule that it is inadmissible. It may fall within the scope of some other exception." Mike Lock's statements to the effect that he disclosed nothing to his wife constitute both admissions and declarations against interest and are thus admissible.

Finally, we hold that the court erred in refusing to permit the widow, Mrs. Lock, to testify *on the issue of her right to the family exemption.* For this limited purpose, she was competent to testify by virtue of §211 of the Fiduciaries Act of 1949, P. L. 512, 20 P.S. §320.211. This section provides: "The spouse of any decedent dying domiciled in the Commonwealth, and if there be no spouse, or if he has *forfeited* his rights, then such children as are members of the same

262

household as the decedent, may retain or claim as an exemption either real or personal property, or both, not theretofore sold by the personal representative, to the value of one thousand dollars. *The surviving husband or wife shall be a competent witness as to all matters pertinent to the issue of forfeiture of the right to the exemption.*" (Emphasis added) The court below held this section inapplicable, stating: "Were we here considering a forfeiture, Mrs. Lock's contention would be well taken. An antenuptial agreement, however, does not evoke a forfeiture of the widow's share of her husband's estate but involves nothing more than a voluntary relinquishment or waiver of such rights." Such an approach, however, flies in the face of two Superior Court cases which have clearly stated that a widow's right to the exemption may be *forfeited* by antenuptial agreement. *Sadowski Estate,* 158 Pa. Superior Ct. 119, 43 A. 2d 907 (1945); *Bell's Estate,* 139 Pa. Superior Ct. 11, 10 A. 2d 835 (1940).[5] Even if we were not to accept the dicta in these Superior Court cases for their precedential value, we would be bound for another reason. The Statutory Construction Act, Act of May 28, 1937, P. L. 1019, §52, 46 P.S. §552 provides in part as follows: "In ascertaining the intention of the Legislature in the enactment of a law, the courts may be guided by the following presumption among others: . . . (4) That when a court of last resort has construed the language used in a law, the

---

[5] These cases were interpreting §12(a) of the Fiduciaries Act of June 7, 1917, P. L. 447, 20 P.S. §471, a predecessor of the statute involved here. Section 12(a) of the 1917 Act read: "The widow, if any, or if there be no widow, or if she has forfeited her rights, then the children forming part of the family of any decedent, dying testate or intestate, within this Commonwealth, or dying outside of this Commonwealth, but whose estate is settled in this Commonwealth, may retain or claim either real or personal property, or the proceeds of either real or personal property, belonging to said estate, to the value of five hundred dollars."

Legislature in subsequent laws on the same subject matter intend [sic] the same construction to be placed upon such language; . . ." It has been held, and rightly so, that where a decision of the Superior Court construing a statute was never modified by the Supreme Court, the presumption was that when the legislature subsequently enacted a similar statute dealing with the same subject matter, the legislature intended the same construction to be placed on the language of the subsequent statute. *Duquesne Club v. Pittsburgh,* 170 Pa. Superior Ct. 426, 87 A. 2d 81 (1952); *Toland v. Murphy Brothers,* 172 Pa. Superior Ct. 484, 94 A. 2d 156 (1953). Whether this presumption is derived from an interpretation of the Superior Court as a "court of last resort" under the statute, or from a common-sense view of the workings of the legislature really makes no difference. The intention of the legislature is obviously to adopt the construction placed upon the word "forfeited" by the Superior Court. We thus hold the widow competent to testify with regard to the family exemption.

It is true that in *Snyder Estate,* 375 Pa. 185, 100 A. 2d 67 (1953), a case involving both an election to take against the will and the family exemption, we held that the widow was incompetent to testify as to the circumstances of her signing the antenuptial agreement. However, at no time during the course of that case was §211 of the Fiduciaries Act of 1949 referred to by anyone. It is quite apparent that the effect of that Act was nowhere considered. Both our opinion and the opinion below relied exclusively on *Robinson's Estate,* 222 Pa. 113, 70 Atl. 966 (1908), and *Inskipt's Estate,* 324 Pa. 406, 188 Atl. 127 (1936), for the general rule of incompetency. Of course, both of these cases were decided long before the enactment of the Fiduciaries Act of 1949, in which for the first time the surviving spouse was made competent to testify on the

264

issue of forfeiture.  *Snyder Estate,* supra, is instantly inapposite.

The case is reversed and remanded, with directions to deny the estate's motion in the nature of a motion for a nonsuit, and for other proceedings consistent with this opinion.  Costs on the estate.

Mr. Justice ROBERTS concurs in the result.