**P.R., Petitioner,**

v.

**PENNSYLVANIA DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 7, 2000.

Decided Sept. 18, 2000.

Nadia Hewka, Philadelphia, for petitioner.

Stephanie J. Marsh, Philadelphia, for respondent.

BEFORE: DOYLE, President Judge, COLINS, Judge, McGINLEY, Judge, SMITH, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, FLAHERTY, Judge.

FLAHERTY, Judge.

P.R., the mother of D.N., petitions for review from an order of the Department of Public Welfare (DPW) which denied P.R.'s request that a report of child abuse against P.R. be expunged. We reverse.

The hearing officer of DPW made the following findings of fact which were adopted by DPW:

1. D.N. was born on August 25, 1983, and resided with her biological mother, P.R., at the time of the alleged incident on April 16, 1990.

2. On April 24, 1990, the Department of Public Welfare, O[ffice of] C[hildren,] Y[outh and] F[amily], received a report alleging that P.R., the biological mother of D.N. had accidentally struck D.N., the subject child, in the right eye while she was attempting to discipline D.N. by using a belt.

3. As a result of this report, Argeleen Wilson, D[epartment of] H[uman] S[ervices] Social Worker, instituted an inves-

tigation of suspected child abuse on April 25, 1990.

4. On or about April 25, 1990, Argeleen Wilson interviewed the Appellant, P.R., and the subject child, D.N., in the Wills Eye Hospital.

5. The subject child, D.N., was hit in the eye with a belt buckle when the Appellant, P.R. attempted to strike her in the buttocks with the strap of the belt in order to discipline her.

6. The subject child, D.N. was admitted to the Wills Eye Hospital for a surgical procedure with respect to her right eye.

7. The subject child, D.N. remained at the Wills Eye Hospital for several days during which a physician performed a surgical procedure.

8. The Appellant did not deny striking the subject child, D.N. in the eye while she was spanking her.

9. The caseworker concluded her investigation by filing an indicated report of child abuse on May 26, 1990.

Hearing officer's Adjudication (Adjudication) at pp. 2–3. The hearing officer framed the salient issue as whether DPW had "presented substantial evidence that the Appellant inflicted non-accidental serious physical injury on the subject child...." *Id.* at 3. The hearing officer noted that the "Appellant's counsel presented the uncontroverted testimony of the child who admitted that she was struck in the eye with an unidentified object while she evaded being struck by the leather strap of the belt (N[otes of] T[estimony] 52–53) during a spanking." *Id.* at 3. The hearing officer then concluded that she afforded "much credibility to her [the child's] statements since she could have easily recanted her initial story...." *Id.* The hearing officer then concluded that P.R.'s request for expungement of her record should be denied because the injury was not accidental. DPW adopted the hearing officer's recommendation in toto. P.R. petitions for review from the DPW's order.

■ Appellate review in this matter is limited to determining whether constitutional rights were violated, whether errors of law were committed or whether necessary findings of fact are supported by substantial evidence. *E.D. v. Department of Public Welfare,* 719 A.2d 384 (Pa.Cmwlth. 1998).

On appeal, P.R. contends that DPW's decision must be reversed because 1) DPW's conclusion that D.N.'s injury was not accidental is unsupported by substantial evidence, 2) DPW applied an incorrect legal standard when it determined that D.N.'s injury was not an accident because P.R. should have foreseen the injury as a natural consequence of her actions, and 3) even if the foreseeability analysis was properly applied, the incident does not constitute child abuse.

P.R. argued before DPW and now argues before this court that although she may have struck D.N. with the belt buckle, she did not intend to do so and it was an accident that happened when she attempted to strike D.N. on the buttocks with the leather portion of the belt. When she went to spank D.N. with the leather portion of the belt on her buttocks, D.N., in an effort to avoid being struck, ducked and turned which resulted in D.N. accidentally being struck in the eye with the buckle of the belt. DPW rejected this argument and reasoned that

[a]n accidental injury is a fortuitous one which one cannot foresee. However, one must not confuse accidental with unintentional.

.... Moreover she [P.R.] should have foreseen the "natural consequences" of her actions — that the child would have made efforts to avoid being struck by the belt.

Adjudication at p. 4. DPW concluded that because in its estimation, the injury to the child's eye was foreseeable by P.R., even if it was unintentional, the injury to D.N.'s eye was not accidental. In support of its conclusion, DPW cited to *J.H. v. Depart-*

*ment of Public Welfare*, 73 Pa.Cmwlth. 369, 457 A.2d 1346 (1983). Adjudication at p. 4. Because we agree with P.R. that DPW utilized the wrong legal standard for determining the meaning of "accidental" injury, we reverse.

The Pennsylvania legislature defined "child abuse" at the time of the incident in question, i.e., April 16, 1990, as "serious physical or mental injury which is not explained by the available medical history as being accidental, or sexual abuse or sexual exploitation, or serious physical neglect of a child under 18 years of age, if the injury, abuse or neglect has been caused by the acts or omissions of the child's parents...." Section 3 of the Act of November 26, 1975, P.L. 438, No. 124, *as amended*, formerly 11 P.S. § 2203, repealed by Section 6 of the Act of December 19, 1990, P.L. 1240.

■ The legislature did not define "accidental" in this context. Where a term is not defined, we are instructed that "words and phrases shall be construed according to rules of grammar and according to their common and approved usage." 1 Pa.C.S. § 1903(a). Moreover, in ascertaining the common and approved usage or meaning, we may have resort to the dictionary definitions of the terms left undefined by the legislature. *See, e.g., Hoffman v. Kline*, 300 Pa. 485, 494, 150 A. 889, 891–92 (1930); *Contas v. City of Bradford*, 206 Pa. 291, 55 A. 989 (1903) and *Department of Labor and Industry v. Unemployment Compensation Board of Review*, 203 Pa.Super. 183, 199 A.2d 474, 478 (1964).

■ As the term accidental is undefined by the legislature, we may turn to the dictionary to assist us in understanding the meaning of this term. Webster's Third New International Dictionary (1986) defines accidental in relevant part as follows:

2: occurring sometimes with unfortunate results by chance alone: a: UN-PREDICTABLE: proceeding from an unrecognized principle, from an uncom-

mon operation of a known principle, or from a deviation from normal; b: happening or ensuing *without* design, [or] *intent* ....

(emphasis added). In the instant case, the injury to D.N.'s eye indisputably happened without design or intent and thus, the eye injury falls within the common and approved definition of "accidental" and hence outside the relevant statutory definition of "child abuse".

■ DPW's conclusion to the contrary relies upon *J.H.* This reliance on precedent although understandable is misplaced. *J.H.* involved a situation remarkably similar to the case at hand. Therein, J.H., a stepfather, attempted to administer corporal punishment to his stepson by striking him across the buttocks with an oak stick. The son however, spun around and ducked and the blow struck him on the head resulting in a laceration requiring six sutures. Following an investigation by the local Child Protective Services, J.H was placed upon the registry of child abusers. J.H sought to have his name expunged on the grounds that the injury was accidental in nature. J.H.'s request for expungement was denied. J.H petitioned for review in this Court. Without performing any analysis of the term "accidental" and without resorting to the dictionary definition of accidental, a panel of this Court concluded that

[a]ll parties agree that *accidental* injuries are beyond the scope of the CPS Law. J.H. contends that the injury to his stepson was accidental because it was unintentional. The record supports the Hearing Officer's conclusion that J.H. intended to inflict pain. J.H. was aware of the natural consequences of his action, *i.e.*, that it would generate the child's reaction even though not intentional. Accordingly, we conclude that the Hearing Officer did not err as a matter of law in not characterizing the injury as accidental.

*J.H.*, 457 A.2d at 1348. Thus, the panel concluded that because such an injury was

reasonably foreseeable it was therefore not accidental. The panel's conclusion in *J.H.* fails to take account of the relevant statutory construction principles, and in doing so, comes to a conclusion that simply is irreconcilable with the common and approved usage and meaning of the term "accidental." That an event is reasonably foreseeable does not thereby always render the event other than accidental. *See, e.g., Ferraro v. Crowell,* 198 Pa.Super. 222, 182 A.2d 98 (1962).

In *Ferraro,* the court had to define the term "accident." The plaintiff in *Ferraro* sued individuals who repossessed his truck. When the defendants came to the plaintiff's house to repossess the truck, they were informed that the truck had been drained of its oil. Heedless of this warning, the defendants nevertheless drove the truck thereby causing the engine to burn out. The plaintiff paid the amount in arrears owing on the truck and took back possession but discovered that the engine was ruined. The plaintiff sought to sue the defendants who were Ohio residents. The plaintiff also sought to serve them with process pursuant to a statute which permitted service upon nonresidents of Pennsylvania who operate vehicles within the Commonwealth in suits "arising out of any accident or collision occurring within the Commonwealth in which such motor vehicle is involved." *Id.* at 99. The issue was whether the damage to the engine was an "accident" permitting service upon the Ohio residents who accomplished the repossession. The Court reasoned that

> [i]n Bouvier's Law Dictionary (unabridged), the word "accident" is defined to be "an event which, under the circumstances is unusual and unexpected[.]" . . . . If a wheel had dropped off the truck when it was being operated by the defendants, we are clearly of the opinion that such an event or happening would be called an accident, considering the common or popular use of the word. In spite of the warning given to the defendants concerning the operation of the

truck without oil in the crankcase, it could hardly be concluded that the destruction of the engine was intentional. **That some damage might be done to the truck in the operation might be reasonably foreseeable does not eliminate the conclusion that it was unexpected or unusual.** We can see no distinction between the dropping off of a wheel during the operation of a motor vehicle and the burning up or destruction of an engine in such vehicle during the operation. In each case, the common understanding of people, generally, would be that it would be called an accident.

*Id.* at 100 (emphasis added). In like manner, even though it may be reasonably foreseeable that a child might attempt to escape from a spanking and thereby cause an injury that was unintended by the parent seeking to administer corporal punishment, this does not eliminate the conclusion that such unintended injury was "accidental." Mere foreseeability does not necessarily render an accidental occurrence other than accidental. To decide otherwise, as did the panel in *J.H.* contorts the common understanding of "accidental" contrary to the intent of the legislature and the rules of statutory construction and brands every parent who experiences a mishap in the administering of corporal punishment a "child abuser" in fact. Because such a result is both unfounded in the law and unreasonable, as amply illustrated by the facts of this case, we must reverse the DPW. Moreover, to the extent that *J.H.* is inconsistent with this case, *J.H.* is overruled.

We do not hold today that in order to engage in child abuse, one must engage in behavior where one intends harm to the child. Negligent conduct is sufficient to permit a finding of child abuse. We merely hold that foreseeability is a necessary but not sufficient element for determining that one has negligently engaged in "serious physical or mental

injury which is not explained by the available medical history as being accidental..." within the meaning of Section 3 of the Act of November 26, 1975, P.L. 438.

### ORDER

NOW, September 18, 2000, the order of the order of the Department of Public Welfare, dated December 26, 1997 and docketed at No. 21–96–291 is hereby reversed.

Dissenting opinion by President Judge DOYLE joined by Judge McGINLEY.

DOYLE, President Judge, dissenting.

I respectfully dissent from the majority's holding that P.R. accidentally injured D.N.

The critical facts are contained in the testimony of the child D.N.,[1] who testified that her mother spanked her with a belt and struck her in the eye.[2] D.N. explained that she was trying to run away from her mother during the spanking and that her mother was chasing her with the belt. The specific testimony is:

Q.... [W]hen you say [P.R.] hit you, tell me what was happening in the room. Were you standing still, were you running away, or what was going on?

A. Running away.

....

Q.... [A]t the time that you got hit with the belt, you said that you were running away from your mother?

A. Yes.

Q. So she was chasing you with a belt?

A. Yes.

(Notes of Testimony (N.T.) at 53, 59; Reproduced Record (R.R.) at 90, 96.) D.N. could not remember how many times that P.R. hit her, but she stated that the spanking stopped when D.N. told P.R. that her eye hurt. Although her memory was not

clear, D.N. stated that the blow from the belt made her eye hurt and her vision blurry; D.N. also noted that, when she went to the hospital, her eye had a burning, itchy feeling, which she described as being "like ... you rub your finger in your eye." (N.T. at 55; R.R. at 92.)

The majority accepts P.R.'s argument that she "**accidentally**" injured D.N.'s eye while attempting to deliver a blow with a belt to the child's buttocks. Based on D.N.'s testimony, the underlying public purpose of the Child Protective Services Law (Law), 23 Pa.C.S. §§ 6301–6385, past precedent of this Court, and the Statutory Construction Act of 1972, 1 Pa.C.S. §§ 1501–1991, I must disagree.

In *J.H. v. Department of Public Welfare*, 73 Pa.Cmwlth. 369, 457 A.2d 1346 (1983), we held that a head injury inflicted on a child by a step-parent while administering corporal punishment was not an accident. The step-parent attempted to strike the child's buttocks with an oak stick, but the child spun about and sustained a blow to the head that resulted in a laceration that was closed by six sutures. We held that the child's injuries could not be deemed accidental for the following reason:

J.H. contends that the injury to his stepson was accidental because it was unintentional. The record supports the Hearing Officer's conclusion that J.H. intended to inflict pain. J.H. was aware of the natural consequences of his action, *i.e.*, that it would generate the child's reaction even though not intentional. Accordingly, we conclude that the Hearing Officer did not err as a matter of law in not characterizing the injury as accidental.

*Id.* at 1348.

In the instant case, the evidence does not show that P.R. merely missed her

---

1. P.R. did not testify before the hearing officer, and D.N.'s testimony was uncontradicted.

2. The incident occurred on April 16, 1990 when D.N. was six years old. D.N. had written on the walls of the house which created the reason for P.R.'s discipline.

intended target, the buttocks, and hit D.N. in the eye with a belt. Instead, D.N. credibly testified that, when her mother produced the belt, she ran away from P.R. According to D.N., her mother then chased her with the belt and, during the chase, delivered the blow, which hit her in the eye. Hence, D.N., as a natural consequence of the anticipated pain of the spanking, ran from her mother, and P.R., before regaining control of the child, struck D.N. with the belt and injured her eye.

It was foreseeable under these circumstances that D.N. would run from P.R., and it was also foreseeable that P.R.'s act of pursuing D.N. and swinging the belt with the buckle on the end could cause serious physical injury to D.N. But even considering that P.R. intended only to deliver a blow to D.N.'s buttocks, chasing and striking a running child with an implement such as a belt with an end buckle creates an obvious risk that the child will be physically harmed, because it is impossible to land a safe, accurate and measured blow on the buttocks in such a situation.[3] Accordingly, I would follow *J.H.* and hold that DPW's determination that D.N.'s injury was not an accident was supported by substantial evidence and correct as a matter of law.[4]

The Majority concludes that *J.H.* should be overruled because the foreseeability analysis, which the *J.H.* Court used to determine that the child's injury was not accidental, is irreconcilable with the common and approved meaning of the word "accidental."

In my view, however, the foreseeability analysis in *J.H.* is properly based on the common law presumption that a person intends the natural consequences of his or her voluntary acts. *Rees v. R.A. Bowers Co.*, 280 Pa. 474, 124 A. 653 (1924). This evidentiary rule is designed to determine a person's intent in various situations and is generally applied in both civil and criminal cases. *See Commonwealth v. Davis*, 266 Pa. 245, 110 A. 85 (1920); *see also Cincinnati Cooperage Co. v. Gaul*, 170 Pa. 545, 32 A. 1093 (1895). Hence, the reasoning in

**3.** P.R. argues that, although it was foreseeable that D.N.'s back or side could be injured during the spanking, it was not foreseeable to her that D.N. would be hit in the eye. Such a result is highly unlikely, in P.R.'s view, despite the fact that it occurred. P.R.'s argument depends on her view of the facts, namely, that she intended to deliver a single blow to D.N.'s, buttocks, but the child unexpectedly moved, and the blow went awry. Contrary to P.R.'s view, the record does not demonstrate that P.R. delivered a single blow during the spanking; nor does the record show that D.N. unexpectedly moved after P.R. put the belt in motion. Rather, the record reveals that the child was running before and at the time she received the damaging blow from the belt, rendering an injury to any part of D.N.'s body foreseeable. I would therefore reject P.R.'s argument, based on facts which can only be considered hypothetical.

**4.** P.R.'s actions cannot be deemed an accident under *Boland v. Leska*, 308 Pa.Super. 169, 454 A.2d 75 (1982), a child custody case. There, William Boland had refused to return his two sons to the home of their mother and his ex-wife, Mary Pamela Leska, after discovering bruises on one of the children. The

Superior Court held that parents are permitted to use corporal punishment to discipline their children so long as the amount of force used is not designed to or known to create a substantial risk of death, serious bodily injury, disfigurement, extreme pain or mental distress, or gross degradation. *Id.* The line between permissible corporal punishment and illegal abuse is reached when the parent acts with malicious intent in striking a child. *Id.* Striking a child with a belt, without inflicting great pain or serious injury, is permissible under the standard articulated in *Boland* and that, by itself, would not constitute child abuse under Pennsylvania's Child Protective Services Law. *See Appeal of E.S.*, 82 Pa. Cmwlth. 168, 474 A.2d 432 (1984).

DPW distinguishes *Boland* from the instant case, however, on the ground that P.R.'s actions created a significant risk of bodily injury to D.N. I agree with DPW. Plainly, pursuing and hitting a running child with a belt or other implement creates a foreseeable risk that the child will be harmed. Under these circumstances, P.R. used force that she should have known could seriously injure D.N. and, in fact, did inflict a serious physical injury on her. In my view, therefore, *Boland* is not controlling in this matter.

*J.H.* does not vitiate the word "accident," but rather the *J.H.* Court merely recognized and utilized a long-standing evidentiary presumption to determine whether the child's injury could be deemed an accident.

The Majority's reliance on *Ferraro v. Crowell*, 198 Pa.Super. 222, 182 A.2d 98 (1962), to support the proposition that a reasonably foreseeable event may or may not be accidental is clearly misplaced. First, the recipient of the alleged mistreatment in that case was a repossessed truck, not a young child specially protected under our Law. Second, the issue in *Ferraro* was wholly different than the one now before us, since it required the interpretation of the word "accident" under a statute that controlled the plaintiff's right to serve the out-of-state persons who repossessed his truck.

Further, notwithstanding the Superior Court's decision in *Ferraro*, the word "accident" may be defined as "[a]n unintended and *unforeseen* injurious occurrence; something that does not occur in the usual course of events or *that could not be reasonably anticipated*." Black's Law Dictionary 15 (7 th edition 1999) (emphasis added). The holding in *J.H.* is entirely consistent with this common definition of "accident", and I would adopt this definition in Black's Law Dictionary over the narrow definition of "accidental" quoted by the Majority.

It must be noted that *J.H.* has been the law of this Commonwealth for well over a decade and, since that time, the General Assembly has not seen fit substantively to change one of the definitions of "child abuse" as a serious injury that did not occur by accident. Just the opposite—even in 1990, seven years after the decision in *J.H.*—the General Assembly in Section 6303 of the Law defined "child abuse" in pertinent part as

[s]erious physical or mental injury **which is not explained by the available medical history as being accidental**, sexual abuse, sexual exploitation or serious physical neglect of a child under 18 years of age if the injury, abuse or neglect has been caused by the acts or omissions of the child's parents or by a person responsible for the child's welfare, or any individual residing in the same home as the child, or a paramour of the child's parent.

23 Pa.C.S. § 6303. (Emphasis added.)

Moreover, although the General Assembly rewrote this section in 1994,[5] with a subsequent amendment in 1995, these alterations did not substantively affect the definition of "child abuse" in using the terms "accidental" or "nonaccidental[.]" Currently, Section 6303 of the Law now reads in pertinent part:

**(b) Child abuse.**

(1) The term **"child abuse"** shall mean any of the following:

(i) Any recent act or failure to act by a perpetrator which causes **nonaccidental** serious *physical* injury to a child under 18 years of age.

(ii) An act or failure to act by a perpetrator which causes **nonaccidental** serious *mental* injury to or sexual abuse or sexual exploitation of a child under 18 years of age.

23 Pa.C.S. § 6303. (Emphasis added and in original.)

Our decision in *J.H.*, filed in 1983, came before any of the above-quoted legislative pronouncements and it is, therefore, reasonable to assume that, in amending Section 6303, the General Assembly intended the same construction to be given to the term "child abuse" as before. *See* Section § 1922 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1922.[6] *See also Stew-*

---

**5.** *See* the Act of December 16, 1994, P.L. 1292 and the Act of March 31, 1995, P.L. 985.

**6.** Section 1922 [Presumptions in ascertaining legislative intent] provides:

In ascertaining the intention of the General Assembly in the enactment of a statute the following presumptions, among others, may be used:

*art v. Unemployment Compensation Board of Review,* 5 Pa.Cmwlth. 145, 289 A.2d 529 (1972) (citing *Lock's Estate,* 431 Pa. 251, 244 A.2d 677 (1968)). We explained in *Stewart* that, where Superior Court holdings have not been modified by the Supreme Court, there is a presumption that the General Assembly, in enacting laws on matters previously considered, intends the same construction of language to be utilized as was previously done by the Superior Court. We further stated in *Stewart:*

> While the presumption so established is not here conclusive because the Legislature has not in fact enacted a new statute on the subject matter, its failure to overturn the Superior Court rule when it had the subject in hand seems further cause for us to adhere to the established interpretation.

*Id.* at 531.

In my estimation, by overruling *J.H.* and changing a heretofore settled principle of law, the Majority obfuscates a standard absolutely critical to our public authorities when dealing with the cases, causes, and incidents of child abuse. The new standard concludes that an accidental act is an unintentional one; that intent is not necessary for child abuse, since negligent conduct is sufficient; but "that foreseeability is a necessary but not sufficient element for determining that one has negligently engaged in 'serious physical...injury which is not explained by the available medical history as being accidental....' " I am not certain what this new standard means, in an area where certainty is a most desirable need.

(1) That the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable.
(2) That the General Assembly intends the entire statute to be effective and certain.
(3) That the General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth.
**(4) That when a court of last resort has construed the language used in a statute,**

Accordingly, for all the above reasons, I would affirm the order of the Department of Public Welfare.

Judge McGINLEY joins.

the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language.
(5) That the General Assembly intends to favor the public interest as against any private interest.
(Emphasis added.)