# Younker v. Berks County
# Board of Assessment Appeals

*Terry L. Parish,* for appellant.
*Edwin L. Stock,* for appellee.

LASH, *J.,* March 14, 2007—The appellant, David G. Younker (landowner), has appealed the decision of the Berks County Board of Assessment Appeals directing a rollback from the preferential use assessment to full market value assessment of landowner's real estate, pursuant to the Pennsylvania Farmland and Forest Land Assessment Act of 1974 (Act 319), commonly known as the Clean and Green Act, 72 P.S. §5490.1, et seq. Pursuant to 72 P.S. §5350(c), the appeal pertains to a rollback from preferential use assessment to full market value for the years 2000 through 2006. Trial was held on March 12, 2007. The parties stipulated to the following facts, which established the trial record:

## I. STIPULATED FACTS

(1) The appellant is David G. Younker (landowner), with a mailing address of P.O. Box 426, Bethel, Pennsylvania 19507-0426.

(2) The appellee is the Berks County Board of Assessment Appeals (board), Berks County Services Center, Third Floor, 633 Court Street, Reading, Pennsylvania 19601.

(3) The real estate (premises), which is the subject of this appeal, is located at 800 Airport Road, Bethel Township, Berks County, Pennsylvania.

(4) The premises is assessed by the board as parcel no. 30-4402-00-47-3240.

(5) The premises was preferentially assessed under the Act from 1997 until June 21, 2006.

(6) The Berks County application for Act 319 Use Value Assessment of Land was executed by landowner on May 19, 1997, and was recorded in the office of the Berks County Recorder of Deeds on May 22, 1997, in book 2833, page 0104.

(7) The premises contains 15 acres, as reflected in paragraph 5 of the application.

(8) The premises was separated from a larger property enrolled under the Act. The use of the property remains the same as the prior use, as reflected in paragraph 5a of the application.

(9) There has been no change of use of the premises since the filing of the application in 1997.

(10) The premises was transferred to landowner by deed dated September 5, 1996, and recorded in the office of the Berks County Recorder of Deeds on September 10, 1996, in record book 2765, page 0522.

(11) Landowner and his father have utilized approximately nine acres of the premises for the operation of a commercial sawmill since 1954.

(12) The sawmill operation on the premises includes, inter alia:

(a) receiving and storing logs purchased from other locations (off-site); and

(b) cutting logs into lumber to be sold off-site; and

(c) processing scrap wood into firewood to be sold off-site.

(13) By written response dated July 31, 2005, to a questionnaire received from the board, landowner advised the board that the 15 acres of the premises was composed of the following uses: five acres of forest or woodland; one acre for a home site; and nine acres for the sawmill business.

(14) By letter dated June 21, 2006 (notice of breach), the chief county assessor advised landowner that he had breached the Clean and Green agreement and that rollback taxes in the amount of $9,718.44, plus interest and recording fees, were imposed.

(15) The notice of breach described the alleged breach as follows:

"In review of Clean and Green records, it has been discovered that the sawmill (rural enterprise) on this property encompasses more acreage than allowed by the Clean and Green Act. As a result of the rural enterprise covering nine acres of land, your agreement covering this tract has been breached. Under the provisions of Act 319, this change is subject to a penalty, which is based on the difference between the market value assessment and the preferential assessment."

(16) On July 5, 2006, the landowner filed a timely appeal from the notice of breach.

(17) A hearing was held on the notice of breach by the board on August 21, 2006, pursuant to written notice.

(18) By final notice dated August 25, 2006, the board upheld the chief county assessor's determination that a breach of the agreement for preferential assessment had occurred.

(19) On or about July 3, 2006, the board forwarded to landowner an interim assessment increase.

(20) On July 11, 2006, landowner filed a timely appeal from the interim assessment increase. That appeal was also denied by the board.

## II. DISCUSSION

The sole issue before this court is whether the commercial sawmill operation situate on nine acres of landowner's property falls within the definition of "agricultural use" qualifying the acreage for preferential assessment under the Act.

The definition of agricultural use appears in section 5490.2 of the Act[1]:

"'Agricultural use.' Land which is used for the purpose of producing an agricultural commodity or is devoted to and meets the requirements and qualifications for payments or other compensation pursuant to a soil conservation program under an agreement with an agency of the federal government. The term includes any farmstead land on the tract. The term includes a woodlot and land which is rented to another person and used for the purpose of producing an agricultural commodity."

Section 5490.2 also defines agricultural commodity as follows:

"'Agricultural commodity.' Any of the following:

"(1) Agricultural, apicultural, aquacultural, horticultural, floricultural, silvicultural, viticultural and dairy products.

---

1. 72 P.S. §5490.2.

"(2) Pasture.

"(3) Livestock and the products thereof.

"(4) Ranch-raised furbearing animals and the products thereof.

"(5) Poultry and the products of poultry.

"(6) Products commonly raised or produced on farms which are:

"(i) intended for human consumption; or

"(ii) transported or intended to be transported in commerce.

"(7) Processed or manufactured products of products commonly raised or produced on farms which are:

"(i) intended for human consumption; or

"(ii) transported or intended to be transported in commerce."

Landowner urges that the sawmill operation qualifies as an agricultural commodity under subsection (1) of the definition, because it is silvicultural. The term "silvicultural" is not defined in the Act. Where a term is not defined, it is to be construed according to its common and approved usage. 1 Pa.C.S. §1903(a). Moreover, in ascertaining the common and approved usage or meaning, the court may resort to dictionary definitions of the term left undefined by the legislature. *P.R. v. Pennsylvania Department of Public Welfare,* 759 A.2d 434, 437 (Pa. Commw. 2000), *appeal allowed in part,* 564 Pa. 504, 769 A.2d 1116 (2001).

Silvicultural is defined generally as a "branch of forestry dealing with the development and care of forests."[2]

---

2. *Webster's Ninth New Collegiate Dictionary,* Merriam-Webster, Inc., Springfield, Massachusetts, U.S.A. (1984) at p. 1098.

The board provided another definition: a "phase of forestry that deals with the establishment, development, reproduction, and care of forest trees."[3]

Landowner points out that other statutes have included sawmills within the definition of farming operations. For example, the Right to Farm Act[4] defined normal agricultural operations to include "crop dryers, feed grinders, sawmills, [and] hammer mills . . . ."

Upon review, we find that landowner's sawmill use is not an agricultural use as that term is defined in the Act. For a use to qualify as agricultural, the agricultural commodity produced must be produced directly from the land. The concept is one of husbandry, using land for the cultivation or production of plants and animals. As so framed, the use is consistent with the goal of the General Assembly in enacting the Act to promote maintenance and preservation of Pennsylvania's farmlands and forests.

In this context, landowner's "production" does not qualify under any of the subsections of the definition of agricultural commodity. The term "silvicultural," in subsection (1), contemplates the planting and growth of forest trees. A commercial sawmill does not engage in this form of husbandry; rather, its production is as a processor, converting raw forest produce into useable wood materials.

We recognize that sawmill products may potentially qualify as an agricultural commodity under subsection

---

3. *Webster's Third New International Dictionary,* 2120 (1986).
4. 3 P.S. §§951-957.

(7) when the processed product comes from raw material produced on the same land where the sawmill is located. However, when, as in this case, the raw material is imported from another location, the agricultural commodity is not produced from the subject land and, therefore, the use of the land cannot be considered to be an agricultural use.

We enter the following order:

## ORDER

And now, March 14, 2007, upon consideration of the appeal of David G. Younker from the decision of the Berks County Board of Assessment Appeals entered August 25, 2006, and after trial held, the decision of the Berks County Board of Assessment Appeals is hereby affirmed.